**Marvin IVEY, Petitioner,**

**v.**

**William C. HOLMAN, Warden, Kilby Prison, Montgomery, Alabama, Respondent.**

**Civ. A. No. 1959–N.**

United States District Court
M. D. Alabama, N. D.

Sept. 26, 1963.

L. Lister Hill, Montgomery, Ala., appointed by the Court, for petitioner.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for respondent.

JOHNSON, District Judge.

The petitioner Ivey, by leave of this Court, filed with the Clerk of this Court on August 2, 1963, his application for a writ of habeas corpus and for the appointment of counsel. At that time, petitioner was and is presently being held in custody by William C. Holman, Warden, Kilby Prison, State of Alabama, Montgomery, Alabama, under three judgments which were made and entered against Ivey by the Circuit Court of Cleburne County, Alabama, in May 1961. Upon these three cases petitioner Ivey received a seven-year sentence, a two-year sentence, and a five-year sentence. On the filing of the petition, this Court ordered the warden to show cause why the writ of habeas corpus should not be issued. On August 12, 1963, the Attorney General for the State of Alabama, representing the respondent-warden in this case, filed his return and answer to this Court's order to show cause. Upon consideration of the petition and the response, this Court, after a pretrial hearing in this cause, by order made and entered herein on August 19, 1963, set this case for a hearing on the following two issues:

(1) The question of whether or not Ivey was adequately and fairly represented by competent legal counsel before the Circuit Court of Cleburne County, Alabama, in its May 1961 term, during which term Ivey was convicted and sentenced to im-

**870**

prisonment by the State of Alabama in cases Nos. 1092, 1093 and 1103, or if not represented by competent legal counsel whether or not Ivey intelligently and voluntarily waived counsel for said trials; and

(2) The question of whether or not Ivey was sufficiently informed by arraignment and service of the indictments as to the nature of the charges for which he was then being tried and convicted, and was so informed within a reasonable time prior to the trials.

The matter was heard before this Court on September 19, 1963, and is now submitted upon the pleadings, the oral testimony and the exhibits.[1] The petitioner Ivey was represented in this cause by the Honorable L. Lister Hill, Attorney at Law, Montgomery, Alabama.

Upon this submission this Court finds that the petitioner Ivey was indicted by a grand jury in Cleburne County, Alabama, at the May 1961 Term, for incest and, in two cases, for assault with intent to ravish. Pursuant to these three indictments warrants were issued for Ivey's arrest, and he was arrested upon said warrants on May 4, 1961. On May 15, 1961, Ivey was brought before the Circuit Court of Cleburne County, Alabama. He was not advised as to his rights to be adequately and fairly represented by competent legal counsel; no inquiry was made as to his financial ability to employ counsel, and no offer was made to appoint counsel for him. At that time, according to the evidence in this case, Ivey was indigent and entitled to have counsel appointed for him unless there was an intelligent waiver by Ivey of this right.[2] Ivey was barely literate, having only a third grade education. At

the time he was brought into court on May 15, 1961, he had not been formally arraigned and had not been formally advised by arraignment or service of the indictments as to the nature of the charges for which he was then being tried. The evidence reflects that some "school bus driver" helped him select his juries. He did not testify at any of the three cases. A verdict of guilty was rendered in the incest case on May 15, 1961, and he was sentenced to seven years in the State penitentiary on May 16, 1961. Verdicts of guilty were rendered in the two assault with intent to ravish cases, with Ivey receiving a two-year sentence and a five-year sentence in those cases. There was no direct appeal taken by Ivey from any of these three convictions. This failure to appeal is immaterial to the questions now presented. Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

On January 28, 1963, petitioner Ivey filed with the Circuit Court of Cleburne County, Alabama, a petition for a writ of error coram nobis. In that petition he raised the two questions that he now presents to this Court. The evidence in this case reflects that a hearing was held on the petition for a writ of error coram nobis by the Circuit Court, and testimony was taken in the case. Upon the submission of the coram nobis proceeding in the Circuit Court, that Court failed to make any findings of fact or conclusions which would require or even justify this Court's concluding, as it did in Allison v. Holman, D.C., 216 F.Supp. 69 (1963), that the matter had been fairly and adequately inquired into by the State authorities. This Court must therefore conclude that Ivey has exhausted the remedies available to him in the courts

1. The colloquy between the Court and the Honorable John C. Tyson III, counsel for the respondent-warden, that occurred in open court at the conclusion of the testimony has been transcribed and filed with the Clerk of the Court; that transcription is attached hereto and, by reference, made a part of this opinion and order.

2. One of the leading cases on indigency and the right of a defendant being allowed to prosecute his case in forma pauperis is Adkins, Administratrix v. E. I. DuPont deNemours & Co., Inc., 1948, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43. The general principles therein stated with reference to indigency are applicable upon the question of a defendant being entitled to the appointment of counsel.

of the State of Alabama and that the courts of the State of Alabama have failed and refused to conduct an appropriate inquiry into his contentions and to make the necessary written findings thereon. This Court recognizes that the action of the Circuit Court in summarily dismissing Ivey's coram nobis petition is subject to review by the Alabama Appellate Courts. However, where the action of the trial court in dealing with the contentions of a state prisoner are so obviously inadequate as is the case here, and where there should have been a timely recognition of this inadequacy by the State authorities and some appropriate action taken to remedy the matter by the trial court's making the necessary findings and conclusions, it would be patently unfair to now require the petitioner-prisoner to pursue his appellate remedy. Thus this plenary hearing, because of the State's failure to make such inquiry, was required by Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, Thomas v. Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863, and very recently by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; see also Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L. Ed.2d 1361 and United States ex rel. Jennings v. Ragen, 358 U.S. 276, 79 S. Ct. 321, 3 L.Ed.2d 296.

From the evidence in this case this Court must find and conclude that Ivey was not adequately and fairly represented by competent legal counsel before the Circuit Court of Cleburne County, Alabama, in its May 1961 Term, during which term Ivey was convicted and sentenced to imprisonment on three cases for a total of fourteen years. See Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. While Gideon v. Wainwright *probably does* not have a retroactive effect—United States ex rel. Linkletter v. Walker, et al., CCA 5, 1963, 323 F.2d 11—the general principles of fundamental fairness as discussed in Gideon have been recognized by the courts of this country for many years. Grosjean v. American Press Co., 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660;

Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461. This Court further finds and concludes that Ivey at that time did not intelligently and voluntarily waive counsel for said trials. Johnson v. Zerbst, supra. This Court further finds and concludes that Ivey was not sufficiently and timely informed by arraignment and service of the indictments concerning the nature of the charges for which he was being tried and convicted. The totality of the facts and circumstances surrounding the prosecution and conviction of Ivey on the three cases in question makes it necessary to conclude further that there was a denial of fundamental fairness within the meaning of Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739. This fundamental unfairness amounted to a denial of due process of law, which was guaranteed to Ivey by the Constitution of the United States. Ivey's discharge from incarceration is necessitated in this case, said incarceration being based upon the judgments of the Circuit Court of Cleburne County, Alabama, in case 1092 on May 15, 1961, for which he received a seven-year sentence; and in cases 1093 and 1103 on May 16, 1961, for which he received sentences of two years and five years, respectively. The facts and circumstances that are peculiar to this case make it appropriate and necessary to observe that the action now taken by this Court with reference to Ivey's release from incarceration on the judgments in question—particularly this Court's action before the expiration of the time for appeal from the summary dismissal of the coram nobis proceeding—is not to be considered as a precedent and is not to be considered as authority in other cases.

In accordance with the foregoing and for good cause, it is the order, judgment and decree of this Court that the verdicts of guilty, the judgments of conviction and the sentences pronounced thereon in the Circuit Court of Cleburne County, Alabama, on May 15, 1961, in case 1092

and on May 16, 1961, in cases 1093 and 1103, all styled State of Alabama v. Marvin Wesley Ivey, be and each is hereby declared void and invalid as being in violation of Ivey's constitutional rights.

It is the further order, judgment and decree of this Court that Marvin Ivey, the petitioner in this case, be discharged from the custody of the State of Alabama and from the custody of William C. Holman, Warden, Kilby Prison, Montgomery, Alabama, and from the custody of any other officers, employees, or agents of the State of Alabama, which custody is or may be pursuant to the convictions and judgments of the Circuit Court of Cleburne County, Alabama, pronounced in cases 1092, 1093 and 1103 on May 15th and 16th, 1961.

It is ordered that Marvin Ivey's discharge from said custody be not later than 10 a. m., October 2, 1963.

It is further ordered that the costs incurred herein be and they are hereby taxed against the respondent, for which execution may issue.

## TRANSCRIPT

(The above case coming on for hearing at Montgomery, Alabama, September 19, 1963, before Hon. Frank M. Johnson, Jr., the hearing was held, at the conclusion of which the following proceedings occurred:)

"THE COURT: You have anything further?

"MR. HILL: No, sir; that is it.

"MR. TYSON: Thank you, your honor; we will submit it on the agreed stipulation there, that is, the affidavits of Judge Bibb and Judge—I beg your pardon—and the Solicitor, Mr. Williams.

"THE COURT: Where does that leave me in that case, Mr. Tyson?

"MR. TYSON: Your honor, this was Mr. Hill's and my thought; we agree that three cases, if it please the court, would pretty well, I think, be relevant and material and would govern this evidence here, and those cases would be Betts versus Brady, Gideon against Wainwright, and Carnley against Coch-

ran, I think those three cases would pretty well—I think that is Mr. Hill's and my joint thought on the matter.

"MR. HILL: Yes, sir.

"MR. TYSON: That those three cases would pretty well govern the evidence. I believe we are in agreement that the record would show a silent record insofar as the original three convictions were concerned, that is on the question of whether or no there was any conversation or an offer to appoint or anything of that nature.

"THE COURT: The record is not silent now.

"MR. TYSON: No, sir; but it would establish, I believe, that there was no offer to appoint, in fact the matter wasn't discussed, originally, it was apparently the position of Judge Bibb and would be our position that the case presents one of whether or no the petitioner was indigent at the time of his original trial.

"THE COURT: No question in my mind that he was indigent as that term has been defined by the Supreme Court.

"MR. TYSON: Yes, sir; well, your honor, that has caused a great deal of confusion in the minds of Circuit Judges.

"THE COURT: If he was there living in a four room house with eleven children, or eleven people, making fifty-five dollars a week, he is indigent, as the Supreme Court has defined it. Whether he is indigent according to mine or your standards doesn't make any difference.

"MR. TYSON: Yes, sir; your honor. Well, I think that that is the whole problem in this case, that there may be a misconception of the definition of "Indigent," and Mr. Hill and I think really that that is the key issue in the case, as to a proper—

"THE COURT: Are you saying that if he was indigent then his constitutional rights were deprived and that the convictions and incarcerations should be set aside?

"MR. TYSON: Yes, sir; your honor.

"THE COURT: I so find; I so find. I find that he was indigent within the meaning of the law. I find that he was not adequately and fairly represented by counsel on either of these proceedings. I find that he was not offered and explained his right to have counsel. It is necessary that I further find that—that he was barely literate, and that he did not know his rights to have counsel. He did not know the procedures that were to be followed. He did not intelligently waive counsel on either of the three cases. I find further that he was not sufficiently and timely informed as to the charges pending against him. Reading an indictment to him in open court and trying him ten minutes later is not timely and sufficient notice on criminal charges.

"MR. TYSON: Yes, sir; your honor.

"THE COURT: I have no alternative except to make those findings in this case.

"MR. TYSON: Yes, sir; your honor; I—

"THE COURT: I will enter a formal order; I will enter a formal order to the effect that those findings necessitate my concluding that his convictions arose out of proceedings during which he was deprived of his constitutional right to be adequately and fairly represented by competent legal counsel in these three cases, and his incarceration by virtue of those convictions, therefore, is illegal; he would have to be released from the judgments and commitments of these courts.

"MR. TYSON: Yes, sir; your honor.

"THE COURT: Now, that leaves you where you found yourself in—in one or more other cases like this, as to whether you are going to rearrest him and retry him by furnishing him legal counsel; that is something that I have indicated, and Judge Rives has indicated, that is not presented to us at this time.

"MR. TYSON: Yes, sir; your honor; I—I believe that would be the Argo case and Powell case.

"THE COURT: That's right; that's right; that's right; that is where the petition was for injunction to keep the State from rearresting him and taking him back up there and retrying him.

"MR. TYSON: Yes, sir; your honor.

"THE COURT: It may be that he ought to be rearrested and retried; I don't know. If he is guilty of the offenses of incest with his daughter and assault with intent to ravish with his granddaughter, that is—that is—that is a heinous charge, and if he is guilty, it is a heinous offense, as far as I am concerned, I don't know. His guilt or innocence, however, is not presented to me at this time, and I am not inquiring into it, or expressing any opinion on it.

"MR. TYSON: Yes, sir; your honor.

"THE COURT: That will be, I am sure, of primary consideration to the State officials when it comes time for them to make a determination as to whether he should be turned loose or taken back up there and tried again.

"MR. TYSON: Yes, sir; your honor.

"THE COURT: That is the only reason I mention it.

"MR. TYSON: I appreciate your honor giving us the benefit of these suggestions and findings this morning. Your honor, if I might make one request, in the order, the formal order that would be entered, if your honor would cite us to the U. S. Supreme Court opinion on the question of what is an indigent it would be most helpful to me, not only in this case, but in future cases, Judge.

"THE COURT: Well, you know what those citations are. If you don't, you can —you can find them as easy as I can.

"MR. TYSON: Yes, sir; yes, sir.

"THE COURT: I plan at this time to predicate a short order on these oral findings I have made in court.

"MR. TYSON: I see, your honor; thank you, your honor; thank you.

"THE COURT: I will have those cases defining indigency as I have followed it here looked up for you if you want me to.

"MR. TYSON: Judge, I—I am—I am quite sincere about that, your honor; it

would be a big help to us, because I would like to—

"THE COURT: All right.

"MR. TYSON: —get the message.

"THE COURT: All right. Recess court until eleven o'clock."