ADKINS, ADMINISTRATRIX, *v.* E. I. DuPONT
DE NEMOURS & CO., INC.

UNITED STATES, INTERVENOR.

No. 1, Misc.   Argued October 18, 1948.—Decided November 22, 1948.

*John W. Porter, Jr.* argued the cause and filed a brief for petitioner.

*G. C. Spillers* argued the cause for the E. I. DuPont de Nemours.& Co., respondent. With him on the brief was *Peter B. Collins.*

*Solicitor General Perlman, Assistant Attorney General Morison, Robert L. Stern, Paul A. Sweeney, Harry I. Rand* and *Morton Hollander* filed a brief for the United States, intervenor. They expressed the view that this Court should remand the case to the District Court for reconsideration of the entire question of leave to proceed *in forma pauperis*—in the light of principles to be enunciated by this Court.

Mr. Justice Black delivered the opinion of the Court.

The questions presented chiefly involve the scope and application of the statute which authorizes a citizen to prosecute or defend actions in federal courts "without being required to prepay fees or costs or for the printing of the record in the appellate court . . . upon filing in said court a statement under oath in writing, that because of his poverty he is unable to pay the costs of said suit or action or appeal, or to give security for the same, . . ." [1]

This action was filed in the United States District Court for the Northern District of Oklahoma by P. V. Adkins. Mr. Adkins died while the litigation was pending and his wife having been appointed administratrix of his estate was substituted as plaintiff. The original complaint claimed overtime compensation, damages and attorneys' fees on behalf of Mr. Adkins and twelve other employees of the respondent [2] "under and pursuant to the Fair Labor Standards Act of 1938 (Title 29, U. S. C. A. Secs. 201–219) and Executive Order #9240 as amended (Title 40 U. S. C. A. following Sec. 326) . . . ." [3]

From a dismissal of her complaint in the District Court and the denial by that court of her motion to set the dismissal aside and grant a new trial, petitioner filed in the District Court a motion to appeal to the United States

---

[1] 27 Stat. 252, as amended, 36 Stat. 866, 42 Stat. 666, 28 U. S. C. § 832. The substance of §§ 1 to 5 of the original statute as amended has now been incorporated in §§ (a) to (e) of 28 U. S. C. § 1915.

[2] Section 16 (b) of the Fair Labor Standards Act, 52 Stat. 1069, 29 U. S. C. § 216 (b), authorized employees' suits by agents. Here the agent was acting "for a consideration contingent upon recovery." An amendment of this section, the Portal-to-Portal Act, 61 Stat. 84, 29 U. S. C. Supp. I, §§ 251–252, limited the circumstances under which such representative actions could be maintained.

[3] Executive Order No. 9240, 7 Fed. Reg. 7159 (1942), as amended, 7 Fed. Reg. 7419 (1942).

Court of Appeals for the Tenth Circuit. She also filed a motion that the appeal be allowed *in forma pauperis.* Her affidavit in support of this motion stated that petitioner was a widow 74 years of age; the estimated costs of the appeal record would be approximately $4,000; all she had was a home, inherited from her husband, appraised at $3,450; her only source of income was rent from parts of her home; and without such income she would not be able to purchase the necessities of life. No objection appears to have been filed to her motion to appeal *in forma pauperis,* but the motion was denied by the court. Apparently denial was for two reasons: (1) She could not proceed *in forma pauperis* where there were twelve other claimants involved who had filed no affidavits of poverty; (2) the court assumed that petitioner's lawyers were employed on a contingent fee basis, and was of opinion that she therefore could not appeal *in forma pauperis* unless the lawyers either prepaid the costs, gave security for costs or filed an affidavit of their poverty along with petitioner and all other claimants.

Petitioner then filed an application for appeal *in forma pauperis* in the United States Court of Appeals. This application was denied. The denial, so the record indicates, was on the ground that to appeal *in forma pauperis,* Mrs. Adkins, the twelve employees, and all the members of the law firm representing her would have to make affidavits of poverty.

Petitioner then went back to the District Court. Ten of the twelve employees filed affidavits in each of which this statement appeared: ". . . because of my poverty I am unable to pay or give security for the costs ($4,000) of such appeal and still be able to provide myself and my dependents with the necessities of life." An affidavit with identical language was filed by one member of the firm of lawyers representing petitioner. The affidavit

also stated that the firm's interest in all fees from this litigation had been assigned to affiant. No affidavit of poverty was filed by the other members of the firm. An affidavit was filed for the firm, however, stating a belief that the claims were meritorious, that appeal costs had been estimated at about $4,000, and that the total liquid assets of the firm did not exceed $2,000. One of the twelve claimants could not be located and one refused to sign an affidavit of poverty.

The district judge for the second time denied the motion to permit appeal without security for costs. His grounds seem to have been these. Two of the claimants had signed no affidavit of poverty; unless all signed, there could be no *in forma pauperis* appeal. The affidavits of petitioner, the ten claimants, and the attorneys were held insufficient in that they failed to show the precise financial condition of affiants, "whether they were or were not without property." The judge was not sure just what affiants would have to show as to property, but felt that each should prove a complete inability to pay at least a portion of the costs. All interested in the recovery, he thought, including the lawyers, "have at least got to chip in to the extent of their ability to pay; and whatever they have, they have got to put in the pot for the purpose of taking the appeal." The judge was "inclined to believe but not sure" that before Mrs. Adkins could be permitted to appeal *in forma pauperis* she must mortgage her home and "chip in" what she received on the mortgage loan. He construed all the affidavits as showing no more than that it would constitute a hardship to pay or give security for the payment of $4,000 to make the record. This statement as to "hardship" he thought did not meet the statutory requirement for an affidavit of inability to pay or secure costs due to "poverty."

Furthermore, the judge thought petitioner had designated more for the record than was needed to decide the dismissal question raised by the appeal. He therefore believed that a $4,000 record was "wholly unnecessary." Since the judge believed he was without power directly to limit the contents of the appellate record, he felt "persuaded to be more technical and more strict" on the type of *in forma pauperis* affidavits he required.

The Court of Appeals thereafter denied a second motion of petitioner to accept its appeal *in forma pauperis*. Petitioner then applied to this Court for certiorari to review the actions of the Court of Appeals and of the District Court in denying petitioner leave to appeal *in forma pauperis*. Petitioner further asked the court for leave to proceed here without giving security for costs. We set the motion down for argument. The matter has now been submitted on briefs and oral argument. The affidavits of poverty filed to proceed here *in forma pauperis* are the same as the affidavits filed in the two courts below.

If these affidavits are thought to be insufficient to support her motion, the petitioner urges that we give directions concerning additional requirements. While for our purposes the affidavits would have been more acceptable had they merely followed the language of the statute, our rules have provided no precise requirements. But the only questions presented here relate to the sufficiency of these affidavits in the two courts below. And to reach these questions, which are important, we must either accept the affidavits as sufficient or delay final consideration of the case. We accept the affidavits, grant the petition for certiorari, and the case having been fully argued, we proceed to pass on the questions presented so far as necessary. See *Steffler* v. *United States,* 319 U. S. 38.

*First.* We do not think the court was without power to protect the public from having to pay heavy costs incident to the inclusion of "wholly unnecessary" matters in an *in forma pauperis* appeal. Sections 1 and 4 of the statute provide that a court may exercise a limited judicial discretion in the grant or denial of the right and this Court has so held. *Kinney* v. *Plymouth Rock Squab Co.*, 236 U. S. 43, 45, 46. Rule 75 (m) of our present Rules of Civil Procedure reads as follows:

> APPEALS IN FORMA PAUPERIS. Upon leave to proceed in forma pauperis, the district court may by order specify some different and more economical manner by which the record on appeal may be prepared and settled, to the end that the appellant may be enabled to present his case to the appellate court. [329 U. S. 870.]

We know of few more appropriate occasions for use of a court's discretion than one in which a litigant, asking that the public pay costs of his litigation, either carelessly or wilfully and stubbornly endeavors to saddle the public with wholly uncalled-for expense. So here, the court was not required to grant the petitioner's motion if she wrongfully persisted in including in the appeal record masses of matter plainly irrelevant to the issues raised on appeal. See *Estabrook* v. *King*, 119 F. 2d 607, 610. And, of course, under Rule 75 (m) the court may save the costs of printing by providing for a typewritten record. If exercise of discretion by a district court should result in an unfair and incomplete record to a litigant's injury, the court's error could be remedied. Its action would be subject to review by the appellate court. Moreover, if in obedience to court order a party should agree to a record inadequate for appellate court purposes, that court would have power, upon motion or *sua sponte,*

to require addition of material necessary to enable the court fairly to decide the appeal questions presented.[4]

*Second.* The statute allowing *in forma pauperis* appeals provides language appropriate for incorporation in an affidavit. One who makes this affidavit exposes himself "to the pains of perjury in a case of bad faith." *Pothier* v. *Rodman,* 261 U. S. 307, 309. This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits. Furthermore, the statute provides other sanctions to protect against false affidavits. Section 4 authorizes a court to dismiss actions brought on affidavit of poverty "if it be made to appear that the allegation of poverty is untrue." And § 5 provides another safeguard against loss

---

[4] We do not mean to indicate that the issues sought to be raised by this petitioner on her appeal could have been properly presented to the Court of Appeals with nothing other than the very limited record the trial court apparently thought would be adequate. The case was dismissed because the District Court thought it had been deprived of jurisdiction by the Portal-to-Portal Act, *supra.* This Act purports to deprive federal courts of jurisdiction to enforce payment of overtime wages based on any activity except one compensable by either "(1) an express provision of a written or nonwritten contract . . . or (2) a custom or practice in effect, at the time of such activity," at the place of employment, and not inconsistent with a written or nonwritten contract governing such employment. Petitioner had contended that examination by the court of the entire record including evidence already taken by a special master would show that employees' claims for compensation were supported by express contracts or by custom. He contended that the Portal-to-Portal Act was therefore inapplicable under the facts of this case and that consequently the dismissal under that Act was erroneous. Petitioner's application to amend her complaint to conform to the evidence was denied by the court. *Cf. Maty* v. *Grasselli Chemical Co.,* 303 U. S. 197, 200–201; *Hoiness* v. *United States,* 335 U. S. 297. It would appear that the petitioner was entitled to have a record that was not so limited as to deprive the Court of Appeals of an opportunity to review these issues she raised.

by the Government due to false affidavits in that a court is permitted, in its discretion, to render judgment for costs "at the conclusion of the suit as in other cases." Consequently, where the affidavits are written in the language of the statute it would seem that they should ordinarily be accepted, for trial purposes, particularly where unquestioned and where the judge does not perceive a flagrant misrepresentation.

Here, the affidavits were not couched in the language of the statute. They went outside that language. Estimating that the costs would be $4,000, each affidavit stated that the affiant could not pay or secure $4,000. In other words, the affidavits here tied inability to pay to a fixed cost of $4,000. Under these circumstances, we think the court was justified in looking further to see if the cost really should have been $4,000 and if not, the judge was right in requiring affidavits made with an appreciation by affiants of the lesser amount of expense to which they might be subjected by the appeal.

*Third.* We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the

effect of this statutory interpretation is to force a litigant
to abandon what may be a meritorious claim in order
to spare himself complete destitution. We think a con-
struction of the statute achieving such consequences is
an inadmissible one. See cases collected in 6 A. L. R.
1281–1287 for a discussion as to whether a showing of
complete destitution should be made under this and sim-
ilar statutes.

*Fourth.* We do not think that this petitioner can be
denied a right of appeal under the statute merely because
other claimants will neither give security for costs nor
sign an affidavit of poverty. This case illustrates that
such a restrictive interpretation of this statute might
wholly deprive one of several litigants of a right of appeal,
even though he had a meritorious case and even though
his poverty made it impossible for him to pay or give
security for costs. Such a deprivation would frustrate
the basic purpose of the statute. This does not mean
that one of several claimants financially able but unwill-
ing to pay his proportionate part of the costs could de-
mand the benefits of an appeal perfected by another
claimant under the *in forma pauperis* statute. But it
does mean in this case that the petitioner, upon making
the required affidavit of poverty, was entitled to appellate
review of the issues the district court decided against her,
without regard to whether other claimants filed an affi-
davit of poverty, or paid or secured their fair part of
the costs.

*Fifth.* Petitioner's appeal under the statute was denied
in part because her attorneys, thought by the District
Court to have been employed on a contingent fee basis,
had not shown to the court's satisfaction that they were
unable on account of poverty to pay or give security for
costs. We think the statute imposes no such burden on
a lawyer who is to share in the recovery through contract

by reason of his legal services. We are aware that some district and circuit courts of appeal have so construed the Act,[5] and that some have even adopted rules which impose this requirement on lawyers.[6] Other district and circuit courts of appeal have declined to interpret the statute as imposing such a burden on lawyers who represent litigants too poor to pay or secure the costs.[7]

Many states, apparently including Oklahoma where this case was tried,[8] make it illegal for lawyers to sign a bond to secure costs for their clients in any civil or criminal action. It would have been an innovation had Congress in this statute expressly permitted lawyers trying cases in federal courts to contract with their clients to pay or secure costs in their clients' cases. But it would have been a surprising legislative innovation for Congress to command that lawyers pay or secure such costs. That Congress did not do this seems to be strongly indicated by the basic statute itself.

[5] *United States ex rel. Randolph* v. *Ross,* 298 F. 64; *Bolt* v. *Reynolds Metal Co.,* 42 F. Supp. 58; *Esquibel* v. *Atchison, T. & S. F. R. Co.,* 206 F. 863; *Feil* v. *Wabash R. Co.,* 119 F. 490; *Phillips* v. *Louisville & N. R. Co.,* 153 F. 795; *The Bella,* 91 F. 540, 543; *Boyle* v. *Great Northern R. Co.,* 63 F. 539; *Silvas* v. *Arizona Copper Co.,* 213 F. 504, 507–508.

[6] Rule 26 (1), Rules of United States Court of Appeals for the Third Circuit; Rule 18 (2), Rules of United States Court of Appeals for the Sixth Circuit; *Chetkovich* v. *United States,* 47 F. 2d 894, but see *Deadrich* v. *United States,* 67 F. 2d 318.

[7] *Quittner* v. *Motion Picture Producers and Distributors of America,* 70 F. 2d 331; *United States ex rel. Payne* v. *Call,* 287 F. 520; *Jacobs* v. *North Louisiana & Gulf R. Co.,* 69 F. Supp. 5; *Clark* v. *United States,* 57 F. 2d 214; *Evans* v. *Stivers Lumber Co.,* 2 F. R. D. 548.

[8] See Okla. Stat. tit. 5, § 11 (1941). See also *Watkins* v. *Sedberry,* 261 U. S. 571, 576; *Peck* v. *Heurich,* 167 U. S. 624, 630. But see, Radin, *Contingent Fees in California,* 28 Calif. L. Rev. 587, 589, 598 (1940).

Section 1 of that statute is intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, "in any court of the United States" solely because his poverty makes it impossible for him to pay or secure the costs. Not content with this safeguard for the poor in federal courts, Congress in § 4 of the Act provided that "the court may request any attorney of the court to represent such poor person, if it deems the cause worthy of a trial, . . ." Certainly a lawyer appointed under § 4 could not be required to pay the costs of an appeal. Nor could such an appointed lawyer have a burden of this kind cast upon him if Congress had required payment of a fee for appointed counsel in an amount fixed as reasonable by the court, a requirement that some state laws have provided.[9] Yet, such a "reasonable fee" fixed by a court would be a "contingent fee" should we accept respondent's argument in this case. For respondent contends that because the Fair Labor Standards Act authorizes a court to fix a reasonable fee for attorneys prosecuting overtime claims for employees, this petitioner's lawyers are on a contingent fee basis. They therefore according to respondent have a financial interest in the recovery. Consequently, respondent argues, petitioner must abandon her appeal and her claim unless these lawyers pay costs, secure them, or make affidavits of poverty.

No proof is needed that imposition of such onerous burdens on employees' lawyers would put serious obstacles in the way of employees obtaining the kind of legal representation Congress intended to provide for them in the Fair Labor Standards Act. And since § 4 of the *in forma pauperis* statute was plainly intended to assure legal representation to the poor, it is also obvious

---

[9] *Clay County* v. *McGregor,* 171 Ind. 634, 87 N. E. 1; *County of Dane* v. *Smith,* 13 Wis. 585; *Ryce* v. *Mitchell County,* 65 Iowa 447, 21 N. W. 771; *State* v. *Hudson,* 55 R. I. 141, 143, 179 A. 130, 131.

that the purpose of that Act could be frustrated in part by construing the statute as imposing a guarantee of appeal costs on all lawyers employed to represent the poor on a contingent basis. For if a person is too poor to pay the costs of a suit, sometimes very small in amount, how can it be imagined that he could possibly pay a fair fee except from the recovery he obtains? [10]

The statute here under consideration is not susceptible of a construction that would impose more burdens on lawyers employed by litigants unable to pay fees except on a contingent basis, than the burdens imposed on lawyers for those litigants who are able to employ counsel by the year or by payment of straight noncontingent fees. Section 3 of the statute specifically states that litigants who make affidavits of poverty shall be entitled to the same court processes, have the same right to the attendance of witnesses, and the same remedies as are provided by law in other cases. And as pointed out, § 4 of the statute makes it abundantly clear that poor litigants shall have the same opportunity to be represented by counsel as litigants in more fortunate financial circumstances. The statutory construction urged by respondent here would result in restricting the opportunities of the poor litigant in getting a lawyer who would follow his case through the appellate courts. For as was said by the Court of Appeals in *Clark* v. *United States,* 57 F. 2d 214, 216: ". . . The same poverty that compels a litigant to avail himself of this beneficent statute makes it impossible for him to hire counsel. He can procure counsel only by agreeing that out of the proceeds of his case, if there are proceeds, counsel shall be compensated. . . . In practical effect he [a poor litigant] is denied counsel if his counsel must either himself guarantee the costs

---

[10] See Radin, *Contingent Fees in California, supra* at p. 589; *United States ex rel. Payne* v. *Call,* 287 F. 520, 522; *Clark* v. *United States,* 57 F. 2d 214, 216.

or file an affidavit that he also is penniless. The statute was intended for the benefit of those too poor to pay or give security for costs, and it was not intended that they should be compelled to employ only paupers to represent them."

It was error to deny petitioner's motion for appeal under the statute on the ground that her lawyers had not made satisfactory affidavits of poverty. The statute requires no affidavit at all from them as a condition of appeal.

What we have said makes it unnecessary for us to pass on the contention of respondent that an agreement for a contingent fee payable out of an employee's recovery to prosecute claims under the Fair Labor Standards Act is invalid.

The orders denying appeal *in forma pauperis* are vacated and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*