THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO CASTRO PÉREZ, Defendant and Appellant.

No. 13501. Argued December 14, 1948.—Decided December 21, 1948.

*César Andréu Ribas* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for The People. *Marcelino Romany* for Court's stenographer, intervener.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Antonio Castro Pérez was convicted by a jury of the crime of murder in the second degree and sentenced by the District Court of San Juan to serve an indeterminate sen-

tence of from twenty to thirty years' imprisonment. He appealed to this Court and in order to perfect his appeal he moved that the stenographer who intervened in the trial be ordered to prepare the transcript of the evidence. The court so ordered and Mr. Pedro R. Arroyo, the stenographer, moved that the defendant be ordered to deposit in the office of the clerk of the court the amount of two thousand dollars which was the estimated cost of the stenographic work to be done by him. The defendant then filed a motion requesting that the stenographer be ordered to prepare the transcript of the evidence free of charge on the ground of insolvency. The stenographer opposed this motion. A hearing was had and defendant introduced oral and documentary evidence. The stenographer presented oral evidence and the court dismissed defendant's motion thus:

"In view of the evidence presented in this case and considering that the defendant was represented by two attorneys to whom he paid their fees, and since the court believes that the defendant is able to pay the stenographer's fees for the transcript of the evidence required for the appeal taken to the Supreme Court of Puerto Rico, the court dismisses the motion seeking the benefit of poverty for the purpose of the transcript of the evidence."

The defendant moved for a reconsideration which was denied by the court. Feeling aggrieved, the defendant took the present appeal. He alleges that the lower court committed three errors, which, in fact, involve one sole question, to wit, if the defendant showed that due to his poverty he is unable to pay for the transcript of the evidence as required by § 5 of the Act providing for the appointment of court stenographers, etc., of March 10, 1904 [1] or, as provided by § 356 of the Code of Criminal Procedure, if he proved "his insolvency to the court," the latter should

---

[1] This Section insofar as pertinent provides that ". . . where after conviction the defendant in a criminal case shall satisfy the court by affidavit or *otherwise* that he is unable by reason of his poverty to pay for such copy . . . the stenographer shall issue such copy free of charge."

have ordered the stenographer to prepare and file the transcript, free of charge.

The *Fiscal* of this Court, after making an analysis of the evidence in his brief, and based on the ruling in *People v. Ramos*, 48 P.R.R. 205, consents to the reversal sought by the appellant.

Since Mr. Arroyo, the stenographer, took part in the proceedings in the lower court he also filed a brief in this Court and appeared at the hearing of the case duly represented by his attorney.

■■ A motion like that presented by defendant in this case is addressed to the sound discretion of the court and it should prevail on appeal unless the record shows an abuse of discretion. *People v. Lawton*, 46 P.R.R. 178; *People v. Cruz*, 57 P.R.R. 86; *Camacho v. District Court*, 67 P.R.R. 751. In order to determine whether the lower court erred in the present case we must examine the evidence presented.

■■ That for the defendant consisted in his own testimony and in the testimony of Julián Molinary, Jesús Castro Rodríguez, Attorney César Andréu Ribas and documentary evidence. Mr. Arroyo, the stenographer, was the only witness in opposition.

The evidence for the defendant tended to show, in brief, that his father, Jesús Castro Rodríguez, receives a monthly pension of $200 from the Federal Government and that his mother is a teacher earning a monthly salary of $100; that his father is owner of a frame house in Santurce appraised in $2,700 for tax purposes, where he lives with his wife, two daughters and a granddaughter, the defendant and his wife; that it was mortgaged to Mr. Julián Molinary to secure a loan of $2,500 with which his father paid the expenses for defendant's defense in the case of murder, of which he paid to Attorney Cayetano Coll y Cuchí and César Andréu Ribas about $1,890; that Mr. Molinary is not willing to make other mortgage on the security of the house and that defendant's father would be unable to meet any other

loan; that the defendant has no work, lives with his wife in his father's house and has other criminal cases pending in which he is represented by Attorney Andréu Ribas to whom he shall pay "if I win the pool or something"; that Mr. Arroyo, the stenographer, first asked $1,000 for the stenographic record, later $2,500 and finally from $1,500 to $2,000; that due to his condition he has been unable to find a job and his friends have refused to help him; that he is insolvent; that he is a veteran and is entitled to receive $90 monthly for studies if he were admitted in school, but that he is not receiving one cent from the government.

Mr. Arroyo, the stenographer, testified that he first estimated the cost of his work at $1,000 and so informed the defendant and his Attorney, Andréu Ribas; that the defendant agreed to procure $500 to begin the work and the other $500 later on; that subsequently he called the defendant and told him that the record was worth $1,500; that after he looked over the forty-three notebooks which he filled during the trial he estimates that his work, according to the schedule fees, is worth $1,683.45. Mr. Arroyo did not rebut in any manner whatsoever, defendant's evidence as to the latter's economic situation but merely estimated, as we have seen, the cost of his work.

The lower court bases its denial: 1st, on the fact that the defendant was represented by two attorneys to whom he paid their fees and 2nd because it believed that the defendant was able to pay the stenographic fees. As to the first ground, we have decided that it is not justified, for the defendant "could have paid for his defense and still not be in a position to pay for the transcript of the evidence." *People* v. *Ramos, supra,* page 208. And in this case such ground is still less justified for it was shown that it was defendant's father who paid said fees and that in order to do so he had to mortgage his only property. The parents are often called upon to make great sacrifices for their children, sometimes they are not worth the sacrifice and at others

they cannot shirk the responsibility of their actions outside the law, notwithstanding the good wishes of their parents. *People* v. *Rivera, ante,* p. 381. However, we would not be justified in deciding that defendant's father in this case should again mortgage or sell his home to pay to the stenographer. We are not, after all, determining the solvency or insolvency of Mr. Jesús Castro Rodríguez, but defendant's.

■■ This takes us to the second ground of the decision appealed from. We have decided that the burden is upon appellant to establish that he is unable to pay, *People* v. *Lawton, supra,* even if he is insolvent. *People* v. *Cruz, supra.* However, in *Camacho* v. *District Court, supra,* on page 753, we said that "in a similar situation in criminal cases, we have indicated that the petitioner is not required to show he is absolutely insolvent, destitute and without the necessities of life. Rather the requirement is that by reason of poverty he is unable to pay the fees." (Authorities) This same doctrine was recently established by the United States Supreme Court in *Adkins* v. *DuPont,* 335 U. S. 331, as follows:

". . . To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one. See cases collected in 6 A.L.R. 1281–1287 for a discussion as to whether a showing of complete destitution should be made under this and similar statutes."

■ Appellant's evidence as to his insolvency and inability to pay the stenographer's fees was not contradicted. Even though this would not by itself be sufficient in a case where the evidence of the defendant fails to establish those facts, as happened in *People* v. *Cruz, supra,* we feel that in the present case appellant has established them.

■ The attorney for the stenographer contends that in the aforesaid case of *People* v. *Cruz, supra,* we decided that the appellant should have filed an affidavit of merits in support of his motion in order to prove to the court that the appeal lay. The *dictum* to this effect in the *Cruz* case is not sustained by the law governing this matter. Section 5 of the Act of 1904, *supra,* merely requires that the defendant "by affidavit or otherwise" shall prove that he is unable "by reason of his poverty to pay" the transcript. And § 356 of the Code of Criminal Procedure still goes further, for it provides that when defendant-appellant "shall have proved his insolvency to the court, *it shall be the duty of said court* to order the stenographer to prepare and file the transcript, free of charge." (Italics ours.) None of these statutes requires the filing of an affidavit of merits as to the case on appeal. In civil cases § 7 of Act No. 17 of 1915, as amended by Act No. 58 of 1942, does require that in order to file an action *in forma pauperis* a copy of the complaint be attached to the affidavit of poverty and only if the complaint is "sufficient in law" in the discretion of the judge may insolvency be granted to sue.

■ Lastly, the intervener urges that since appellant could have prepared a statement of the case for perfecting his appeal, pursuant to § 356, *supra,* the lower court did not abuse its discretion in denying the motion of insolvency. But the Act of 1904, *supra,* as well as § 356, *supra,* grants to an insolvent defendant the right to perfect his appeal by a transcript of the evidence without limiting said right in the sense that it must be done by a statement of the case under specific circumstances. If we should so decide the

insolvent defendants would never be able to obtain the transcript of the evidence free of charge. It is incumbent on the Legislature to regulate more restrictively, if it so wishes, the right granted, either by requiring an affidavit of merits or by limiting the insolvent defendants to use the statement of the case in their appeals.[2]

The decision appealed from should be reversed and another rendered declaring the appellant insolvent with the right to obtain from the stenographer the transcript of the evidence, free of charge, within the term fixed by the lower court.

Mr. Justice Marrero and Mr. Justice Negrón Fernández did not participate herein.

---

[2] It could also, if it wished, adopt Rule 75 (*m*) of the Federal Rules of Civil Procedure as to appeals *in forma pauperis* which provides that: "Upon leave to proceed in forma pauperis, the district court may by order specify some different and more economical manner by which the record on appeal may be prepared and settled, to the end that the appellant may be enabled to present his case to the appellate court. 329 U. S. 870."

It should be observed that Rule 39 (*b*) (1) of the Federal Rules of Criminal Procedure provides that "The rules and practice governing the preparation and form of the record on appeal in civil actions shall apply to the record on appeal in all criminal proceedings, except as otherwise provided in these rules."