**UNITED STATES of America, Plaintiff,**

v.

**Conrad Bruce SOLOMONSON, a/k/a
C. Bruce Solomonson, Defendant.**

No. 3–88 CR 73.

United States District Court,
D. Minnesota,
Third Division.

March 8, 1989.

Henry J. Shea, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Joseph A. Walters, Robert A. Brunig, and Corey J. Ayling, O'Connor & Hannan, Minneapolis, Minn., for defendant.

### ORDER DENYING APPEAL IN FORMA PAUPERIS

DEVITT, District Judge.

Defendant, convicted of eight counts of mail fraud and one count of bank fraud, has filed a notice of appeal and moves under Federal Rule of Appellate Procedure 24 that he be allowed to proceed *in forma pauperis.* Plaintiff opposes the motion.

Defendant's affidavit in support of the motion recites the language of Federal Rule of Appellate Procedure 24 and supplies some, but not all, of the information required by Form 4 of the Appendix of Forms to the Rules. Such an affidavit ordinarily should be accepted as sufficient when uncontested and where the judge does not perceive a flagrant misrepresentation. *Adkins v. E.I. DuPont DeNemours & Co.,* 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). A hearing on the issue was held March 1, 1989. Defendant's trial attorneys submitted a brief and represented defendant at the hearing. Plaintiff's attorney also lodged a brief.

Defendant was sworn to tell the truth under penalties for perjury and testified at length under examination by Assistant United States Attorney Shea. Defendant's claimed "inability to pay fees and costs" (Rule 24) was vigorously contested.

The record reflects that defendant, an insurance company executive, has enjoyed a better than average lifestyle. He has lived for some 20 years in a six-bedroom, lakeshore home in the Minneapolis area now valued at a million dollars, and the family has a Florida residence valued at more than a quarter million dollars. He has maintained golf club memberships in Minneapolis and Florida. The family has several cars. His living and family expenses have been high. Evidence at trial reflected (Govt's Ex. 113) that defendant spent $1,000,981.52 in personal expendi-

tures from January 1984 to June 1987. Defendant and his wife have accumulated a substantial inventory of jewelry, art objects and other luxury items.

Defendant's financial statement as of February 28, 1987, prepared by a Certified Public Accounting firm, reflected a net worth of $861,700. Defendant submitted an unsworn handwritten financial statement as of December 15, 1988, claiming a net deficit of − $272,722. This represented an unexplained net worth decrease of $1,134,422 in a 22-month period. The government claims defendant has engaged in the fraudulent conveyance and transfer of substantial real and personal property since July 1987 when he departed the insurance agencies he previously headed.

The Assistant United States Attorney's examination of defendant at the hearing on March 1, 1989, was principally directed to the present ownership and value of assets listed in these financial, and other submitted, statements. He particularly sought an explanation of the marked difference between defendant's ownership of 81 items of jewelry and art objects (as reflected in a homeowners' insurance policy) valued at some $254,953 as of April 4, 1988, and the later claim of ownership of but 47 items worth only $54,401 (as reflected in a jeweler's certificate of appraisal) some seven months later on November 7, 1988. Defendant failed to offer any plausible explanation for the claimed substantial decrease in the ownership and value of this property over such a short period of time. Defendant was equivocal or denied knowledge in responding to questions on the subject.[1] It leads to the conclusion that defendant's representations were not a true reflection of the present ownership and value of these assets.

The court concludes from the record that defendant has present ownership, probably in joint tenancy with his wife, of most of the 81 jewelry and art objects listed in the Home Insurance Company's Homeowners Policy and that such items have a likely present value of at least $200,000. These items are unencumbered with liens and are marketable. The defendant stated there was no reason these items could not be sold.

Several of the items should be readily saleable and well may bring a higher than valued sale price. Item # 12 on the Homeowners Policy Inventory is a *Gents 18 Karat Yellow Gold Rolex President Watch with 18 karat attached band,* inventoried by defendant at $7,950.00. Item # 13 is a *Man's Girard Perrequaz watch (from President Marcos of the Philippines) with 18 Karat yellow gold watch and band,* a gift, defendant said, from his father-in-law, valued at $3,000. Item # 76 is a *Gents ring 1.31 Karat Diamond set in 18 Karat yellow gold mounting,* inventoried at $8,000. An antique, Item # 5, is a *Doll House with handmade accessories,* valued at $20,000.

Some of these listed luxury items may be sold to defray defendant's anticipated appeal expenses ($10,000 transcript cost and $105.00 filing fee) rather than to impose that charge upon the public treasury by granting defendant's motion to appeal as a poor person.

It was urged at the hearing that defendant has additional liquid assets not previously reflected in the record or in his financial statements. These include sale of Cadillac car, $10,000; sale of Oldsmobile car, $9,000; sale of Florida Country Club membership, $9,700; sale of R.J. Reynolds stock, $3,800; cash value of recently terminated insurance policies, $12,800; totalling $45,300.

Defendant said these monies were used to pay "liabilities" but he could not be specific except to say he bought his wife a 1987 Honda automobile.

It was also shown that defendant owns a $13,000 contract for deed on a N.E. Minneapolis home which is assignable.

---

**1.** Examples of defendant's response to questions directed to an explanation of the discrepancies taken from the record follow: "I don't know," "I can't say," "I can't recall," "I can't say I did own that," "I don't know when it was sold," "I am not sure if it is still owned by me," "Not aware of that," "Not familiar with that."

Additionally, a Florida lot and boats now listed in his wife's name, but prior to 1987 listed in joint ownership with his wife, were paid for from their joint checking account. The government urges these assets (of an estimated value of at least $100,000) and other properties were fraudulently assigned by defendant in 1987.

It would serve no purpose here to draw a conclusion as to whether defendant made fraudulent transfers or as to defendant's exact net worth. It is enough to say that the defendant has adequate free assets to pay the cost of appeal and that he has not shown that he qualifies to proceed as an indigent person under Appellate Rule 24.

Defendant, in his affidavit, has alleged that three family members are dependent upon him for support, his wife Nancy and daughters Vicky and Cindy. But his testimony at the hearing was at variance with this. He said his wife and daughters were each beneficiaries of family trusts and that recent contributions to his children were "minimal" and "small," consisting of occasional purchases of clothing and gifts. He indicated his wife had a trust income of some $30–35,000 per year. Her December 15, 1988 financial statement reflects substantial assets. He did not state the annual trust income of his daughters. His submitted financial statements reflect that he has borrowed some $88,000 from daughters Jill, Amy and Cindy, presumably from their trusts. He said his daughter Vicky is in a home where her needs are adequately cared for. It thus appears that defendant's financial needs are essentially limited to providing for his own necessaries, and that luxury items such as jewelry and antiques, as well as substantial property purchased by defendant and his wife from their joint checking account, are readily available to defray the costs of appeal. Defendant does not qualify as a pauper under the Rule.

One of defendant's counsel, Mr. Brunig, urged at the hearing that he or his co-counsel, Mr. Ayling, would be favorably disposed to accepting appointment under the Criminal Justice Act to represent defendant on appeal. In this circuit, where a defen-dant seeks appointment of counsel under the Criminal Justice Act for the first time on appeal, the court of appeals determines whether the defendant is eligible. Eighth Circuit Plan to Implement the Criminal Justice Act of 1964, §§ II(3) and IV(2). Accordingly, I do not address this issue.

I am satisfied that on this record, defendant has failed to meet his burden of showing his inability to pay fees and costs or to give security therefor. The motion is DENIED.

These expressions are meant to comply with the requirement of Appellate Rule 24(a) that the court state in writing its reasons for the denial of the motion. The clerk is directed to forthwith serve notice of this action upon defendant and his attorneys.