**UNITED STATES of America**

v.

**Nelson VALDES, Defendant.**

**No. CRIM.A.01–0154–01RMU.**

United States District Court, District of Columbia.

Jan. 28, 2004.

Paul H. Zukerberg, Valencia R. Rainey, Federal Public Defender for D.C., Washington, DC, for Defendant.

J. Patrick Rowan, Julieanne Himelstein, U.S. Attorney's Office, Washington, DC, for Plaintiff.

### *ORDER*

URBINA, District Judge.

#### DENYING THE DEFENDANT'S THIRD *IN FORMA PAUPERIS* APPLICATION

This criminal case comes before the court on the defendant's third application for *in forma pauperis* ("IFP") certification.[1] Previously, the court denied the

---

1. In short, IFP is Latin for "in the manner of a pauper." Black's Law Dictionary 783 (7th ed.1999).

defendant's June 10, 2003 application to proceed IFP on appeal because the defendant had failed to provide information requested in the form application. Order dated June 13, 2003. In doing so, the court allowed the defendant to refile his application by providing complete answers to all questions no later than August 8, 2003. *Id.* On August 18, 2003, the defendant late-filed a second IFP application along with a supporting personal affidavit that attested to the information provided in his new application. On August 21, 2003, the court referred the defendant's second application to the defendant's probation officer for verification of the statements provided by the defendant in that application. Order dated Aug. 21, 2003. Specifically, the court asked the probation officer to report his independent findings regarding the defendant's monthly salary/wages, the current value of the defendant's home(s), and the total monthly rental payments that the defendant receives from his tenant(s).

Upon review, the probation officer identified discrepancies between the information provided in the defendant's second application and other sources reflecting the defendant's actual assets and income. In particular, it became evident that the defendant had failed to accurately report, *inter alia*, his net income, employment, valuable personal property, and equity in real property.[2]

To provide the defendant with an opportunity to explain these discrepancies, the court directed him to show cause in writing by October 23, 2003 as to why the court should not deny his second application. On October 22, 2003, the defendant filed his response to the court's show-cause order. Instead of responding to the court's noted concerns regarding his failure to accurately report information pertaining to his actual assets and income, the defendant simply stated that "Mr. Valdes has a net worth of negative $44,128 and a monthly cash flow of negative $2,178." Def.'s Resp. to Show Cause at 1.

On November 18, 2003, the court held a hearing on the defendant's second application. At that hearing, the defendant failed to demonstrate his alleged poverty or account for the erroneous information provided to the court. It also became evident that the defendant had been less than sincere in his allegations of poverty. The court denied the defendant's second application, but granted his request for leave to file a third application that establishes his eligibility for IFP support on appeal. Once again, the court asked the probation officer to investigate the information sub-

2. Numerous discrepancies exist between the defendant's original and subsequent applications. For example, in his June 10th application, the defendant stated that he did not receive any rent payments, while his subsequent applications and the August 18th affidavit acknowledge that he receives monthly rent from his tenant. In addition, the defendant claimed in his June 10th affidavit that he made monthly payments of $250 for child support, and later lessened the sum to $160 in his August 18th application. The defendant also claimed in his August 18th application and affidavit that he held only one job, yet the probation officer discovered that he in fact had two jobs and failed to report the second one to the court. Also discovered was the fact that the defendant did not provide the true amount of his monthly income, which is considerably higher than what the defendant had reported in the first two applications. Furthermore, the defendant failed to report in the first two applications that he owns two automobiles with a combined value of approximately $30,000.00. Finally, although the defendant reported that his home was worth $140,000 in his first two applications, he reveals in his third application that his home is actually worth $253,333. These detailed discrepancies do not comprise an exhaustive list of the defendant's failure to report accurate information to the court.

mitted in the forthcoming third IFP application to ensure its accuracy.

On January 12, 2004, the court received a report from the probation officer that confirms the validity of the information submitted in the defendant's third application. Thus, the court is once again called upon to determine whether the defendant is entitled to IFP support on appeal.

■■■■ The federal IFP statute—originally enacted in 1892, and the substance of which was later codified in 28 U.S.C. § 1915—is intended to benefit those too poor to pay or give security for costs of litigation. *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (citing *Adkins v. E.I. Du Pont de Nemours & Co.,* 335 U.S. 331, 342–43, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). The Supreme Court has noted that, in its general terms, 28 U.S.C. § 1915(a) prevents federal courts from denying a person the opportunity to commence, prosecute, or defend a civil or criminal action solely because their poverty makes it impossible to pay or secure the costs of litigation. *Id.* The individual seeking IFP certification, however, must submit an affidavit of indigency or poverty that sufficiently demonstrates his inability to both provide himself with the necessities of life and pay the costs of litigation. 28 U.S.C. § 1915(a); *Adkins,* 335 U.S. at 339–40, 69 S.Ct. 85. "The determination of a court whether to allow one to proceed *in forma pauperis* must be made separately in every case." *In re Green,* 669 F.2d 779, 786 (D.C.Cir.1981).

The defendant's third application seems to remedy several of the discrepancies inherent in the first two applications. For example, the defendant now reports that he holds two jobs that together yield a total monthly income of $2,116.66. On top of that income, the defendant reports a $450 monthly income from his tenant. In addition, the probation officer verifies that the defendant has over $80,000 of equity in real estate located at 4433 5th Street, N.W., Washington, D.C., which carries a present value of $253,333. Furthermore, the defendant acknowledges his ownership of two fairly new automobiles—a 2003 Pontiac Grand Prix and a 2001 Nissan Altima—which have a combined value of approximately $30,000.[3]

■■■ In light of the defendant's reported income from both his employment and tenant, the equity in his real estate, and the value of his automobiles, the court determines that the defendant has once again failed to evidence indigency in his IFP application. Although the defendant avows that "because of my poverty, I am unable to pay the costs of said proceeding or give security therefor [and] that I believe I am entitled to relief," his reported assets and income suggest that he is *not* an individual of modest means and is perfectly able to pay the costs associated with his appeal without depriving himself of life's necessities. 28 U.S.C. § 1915(a); *Adkins,* 335 U.S. at 339–40, 69 S.Ct. 85; Def.'s 3d Application at 1. This is not to say that the court requires a party seeking IFP certification to demonstrate penniless destitution, or that such an individual must forego sufficient food, shelter, clothing, or support for dependents in order to pursue his appeal. *See Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827; *Adkins,* 335 U.S. at 342–43, 69 S.Ct. 85. To the contrary, no man should be forced to go hungry to maintain his appeal, otherwise he himself may become a public charge and contravene the

---

**3.** The court notes that the combined value of the vehicles may be higher than the defendant reports if priced by Kelly Blue Book standards. To give the defendant the benefit of any doubt, however, the court will credit the defendant's reported value as true for the purpose of ruling on the instant IFP application.

very purpose of the federal IFP statute. *See id.* Nevertheless, something more than a mere statement of poverty is necessary before the court can confer IFP status on the defendant. 28 U.S.C. § 1915(a); *Adkins*, 335 U.S. at 339–40, 69 S.Ct. 85.

The simple fact remains that the defendant's third application disqualifies him from a "poverty" classification because it confirms his comfortable lifestyle with valuable disposable assets. The court does not reach the question of whether the defendant carelessly, wilfully, or stubbornly endeavors to saddle the public with wholly uncalled-for expense—that is a separate issue relating to the principles of perjury and bad faith. *See Adkins*, 335 U.S. at 338–39, 69 S.Ct. 85 (recognizing that "[o]ne who makes this affidavit exposes himself to the pains of perjury in a case of bad faith" and that it is "important [to] protect[ ] the public against a false or fraudulent invocation of the statute's benefits"). Suffice it to say that allowing the defendant to proceed IFP would require the court to turn a blind eye to the defendant's *actual* financial circumstances. Such a ruling would render the court an unfit steward of the public purse.

For all of the foregoing reasons, it is this 28th day of January 2004,

**ORDERED** that the defendant's third application is **DENIED**.

**SO ORDERED.**