Debra J A FIEBELKORN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 07–18 C.

United States Court of Federal Claims.

May 7, 2007.

Debra J A Fiebelkorn, Watertown, SD, pro se.

David Hibey, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

### ORDER

HEWITT, Judge.

I. Pleadings

The court has before it plaintiff's Application to Proceed *In Forma Pauperis* (Application or Pl.'s App.), filed on January 11, 2007. Defendant had until January 29, 2007, to respond to plaintiff's Application but did not do so. The court reviewed plaintiff's Application, concluded that it was incomplete, and ordered plaintiff to complete the Application, with attachments, by March 30, 2007. Order of Mar. 8, 2007. Plaintiff submitted her Motion to Amend Application *by* Pro Se Plaintiff to Proceed in Forma Pauperis (Supplemental Application or Supp.App.) on April 3, 2007. The court deemed it filed as of April 4, 2007. Order of Apr. 4, 2007. On April 10, 2007, plaintiff submitted unfiled an additional attachment to her Supplemental Application, entitled Application *by* Pro Se Plaintiff to Proceed in Forma Pauperis (Supplemental Attachment or Supp. Attach.). The court deemed it filed as of April 27, 2007. Order of Apr. 27, 2007.

By Order of April 27, 2007, the court sua sponte caused the Application, Supplemental Application, and Supplemental Attachment to be placed under seal by cause of certain confidential information contained therein

and not required for the determination of plaintiff's Application. Information required for the determination of the Application is cited in this Order.

The court considers plaintiff's Application, Supplemental Application, and Supplemental Attachment in this Order.

## II. Statutory Scheme

*In forma pauperis* (IFP) applications seek to invoke the court's power to "authorize the commencement ... of any suit, action or proceeding ... without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1) (2000). Specifically,

> any court of the United States may [waive an applicant's fees] by a person who submits an affidavit that includes a statement of all assets such *prisoner* possesses [and] that the *person* is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the *person* is entitled to redress.

*Id.* (emphasis added).[1]

## III. Background

On January 11, 2007, plaintiff filed a Complaint with the court. Complaint of Jan. 11, 2007 (Complaint or Compl.). Plaintiff alleges that the State of South Dakota terminated her employment at the Department of Corrections, South Dakota State Penitentiary, on May 27, 2005, because of her disabilities. Compl. 2. She claims that "I truly believe I have a case of discrimination. I believe the State of South Dakota has never regarded my disabilities, therefore, not honoring State EOC [sic] and Federal [American with Disabilities Act (ADA) ], Civil Rights, etc.[ ] and my Constitutional Rights were taken away." *Id.* at 1. For relief, plaintiff is "asking for [her] disability payments, retroactive and then full retirement as a Registered Nurse, with full benefits for life. For [her] son, Ed, full insurances for life. Money in the amount of $1,000,000. Payment in full, now for all [her] expenses, that will incur the rest of [her] life." *Id.* at 3.

Plaintiff filed her Application on the same day that she filed her Complaint. Pl.'s App. 1. Plaintiff is presently unemployed.[2] *Id.* In her Application, plaintiff listed her assets: In the last twelve months, plaintiff received an unspecified amount of Social Security Income (SSI) and child support from the Social Security Administration, she owns her home and a 2003 Oldsmobile Alero, and she owns a checking account where her SSI is deposited. *Id.* at 1–2.

Plaintiff did not specify the value of her car. *See* Pl.'s App. *passim;* Supp.App. *passim.* The Kelley Blue Book suggested retail value for a 2003 Oldsmobile Alero—in the zip code that plaintiff lives in, assuming that the car has standard features, is in excellent

---

1. Although the language of the statute, by alternating between "person" and "prisoner," immediately raises the issue of whether it applies to all persons or only to prisoners, courts generally accept that it applies to all persons. For further discussion, see *Hayes v. United States,* 71 Fed.Cl. 366, 366–67 (2006) ("The court ... holds that the right to petition a federal court to proceed in forma pauperis applies to both prisoners and non-prisoners.").

The statute also specifies that the functions defined under § 1915, including waiver of the requirement to prepay filing fees, may be authorized by "any court of the United States." 28 U.S.C. § 1915(a)(1). The statutory meaning of "court of the United States" includes the Court of Federal Claims. *See, e.g., Joshua v. United States,* 17 F.3d 378, 379 (Fed.Cir.1994) (relating how the Court of Federal Claims granted a petition to proceed in forma pauperis); *Heuss v. United States,* 75 Fed.Cl. 636 (2007) (order granting in forma pauperis application). For further explanation, see *Hayes,* 71 Fed.Cl. at 368.

2. Plaintiff indicates that she received $20 per hour at her last employment. Application to Proceed *In Forma Pauperis* (Application or Pl.'s App.) 1. This is not a complete response to the directions because it does not specify how many hours plaintiff worked per month, making it impossible to calculate her "wages per month." *Id.* In her Motion to Amend Application *by* Pro Se Plaintiff to Proceed in Forma Pauperis (Supplemental Application or Supp.App.), plaintiff clarified that she earned $41,592 in adjusted gross income in 2004, Supp.App. Att. 4, and $22,247 in adjusted gross income in 2005. *Id.* at Att. 5. Because plaintiff's last employment ended on May 25, 2005, almost two years into the past, Application *by* Pro Se Plaintiff to Proceed in Forma Pauperis (Supplemental Attachment or Supp. Attach.) 1, the court considers this information unnecessary to the determination at hand.

condition, and is at the typical mileage for such vehicles (60,000 miles)—ranges from $8,280 to $10,670, depending on the trim. *See* Kelley Blue Book, http://www.kbb.com/KBB/Selection/ZipCode.aspx (last visited Apr. 24, 2007).

Plaintiff has shown no indication of the value of her home. *See* Pl.'s App. *passim;* Supp.App. *passim.* An arrow from her statements about her home and her car points to a note stating, "I owe $45,000." Pl.'s App. 2. The court infers from this and from the estimated value of plaintiff's car that plaintiff has a mortgage on her home. This is confirmed by a reference to a mortgage in plaintiff's Supplemental Application. Supp.App. Attach. 8.

Plaintiff did not specify how much money she currently has in the checking account she referred to in question 3. *See* Pl.'s App. *passim;* Supp.App. *passim.* She stated the following of her account: "checking—my SSI is direct deposit." Pl.'s App. 2. From this, the court infers that plaintiff's checking account contains assets from her SSI and not additional assets that she has not yet identified.

Plaintiff's Supplemental Application and Supplemental Attachment shed some light on plaintiff's financial circumstances, although the information is not entirely consistent with the information in her Application.

Plaintiff clarified that she received $12,085 for herself and $5,908 for her son in nontaxable income through the Social Security Administration for the year 2006, Supp.App. Attach. 1; *see also* Supp. Attach. 2. Plaintiff has been certified for food stamp benefits from January 22, 2007 to December 31, 2007, at a base rate of $284 per month,[3] Supp.App. Attach. 2.

Plaintiff included in her Supplemental Application a Certificate of Counseling (Certificate) indicating that she will file or has filed for bankruptcy. Supp.App. Attach. 8. In her initial Application, plaintiff claimed that she owes $45,000 on her car and home, Pl.'s App. 1–2, but in her Certificate, her total debt is stated to be $73,231. Supp.App. Attach. 8. The Certificate calculates plaintiff's total lia-

bilities at $117,187 and total assets at $103,500. *Id.* How these figures were calculated and whether they include the assets and liabilities that plaintiff identified in her Application, such as her home and her car, is unclear. *See id.* The Certificate calculates plaintiff's net worth to be negative $13,687. *Id.*

Plaintiff appears to have at least two dependents. Pl.'s App. 2; Supp. Attach. 2. However, there is an inconsistency in plaintiff's filings as to who is dependent on her. In her Application, defendant writes that "my 14 year old son is 80% dependent" and "my 93 year old mother is 80% dependent." App. 2. In her 2006 tax return, however, defendant lists two sons as dependent. Supp. Attach. 2.

Plaintiff was directed in her Application to "indicate how much you contribute toward [the] support [of your dependents]." Pl.'s App. 2. Plaintiff wrote "my 14 year old son is 80% dependent" and "my 93 year old mother is 80% dependent." *Id.* This is not a complete reply to the directions because plaintiff failed to indicate how much she contributes toward the support of her dependents. Although plaintiff did not clarify this specific point in her Supplemental Application, the Certificate calculates plaintiff's actual monthly budget at $2,825, as compared to her recommended monthly budget of $2,310. Supp.App. Attach. 8. The Certificate states that plaintiff's current monthly income is $1,185. *Id.* Whether that is gross or net and what the source of the income is (that is, whether it includes the social security income and the food stamps) is not clear. *See id.* Regardless, the calculation claims that plaintiff is making $1,640 less than is needed to meet her current budget. *Id.* Even if plaintiff stayed within her recommended budget, she would be making $1,125 less than she would need. *Id.*

IV. Discussion

A. Plaintiff Meets the Requirement of Poverty

■ Although plaintiff's Application, Supplemental Application, and Supplemental At-

---

3. The initial rate of $284 per month, pro rated in the first month, fluctuates monthly depending on

"unearned income." Supp.App. Attach. 2.

tachment remain incomplete and slightly ambiguous, the threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be "unable to pay such fees." 28 U.S.C. § 1915(a)(1). To be "unable to pay such fees" means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 93 L.Ed. 43 (1948) ("We think an affidavit is sufficient which states that one cannot because of his poverty 'pay or give security for the costs ... and still be able to provide' himself and dependents 'with the necessities of life.'" (alteration in original)); *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir.2004) ("When considering a motion filed pursuant to § 1915(a), '[t]he only determination to be made by the court ... is whether the statements in the affidavit satisfy the requirement of poverty.'" (alteration in original)) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir.1976)); *Hayes v. United States*, 71 Fed.Cl. 366, 369 (2006) ("The provision for waiving prepayment of filing fees provided by 28 U.S.C. § 1915 is not intended to take effect only after the applicant has exhausted all of his or her resources.").

■ Plaintiff's income combined with her son's income for 2006 from the Social Security Administration is only $823 above the 2007 Department of Health and Human Services Poverty Guidelines for three-person families (Poverty Guidelines), $17,170.[4] Annual Update of the HHS Poverty Guidelines, 72 Fed. Reg. 3147 (Jan. 24, 2007). If we assume that plaintiff's current income of $1,185 per month includes her son's SSI and her food stamps, plaintiff's income is currently $2,950 per year below the Poverty Guidelines. If we assume that plaintiff's current income of $1,185 per month does not include her son's SSI, and if we assume that her son's SSI is roughly equivalent to his SSI from 2006, plaintiff's family is $2,958 above the Poverty Guidelines for this year.

Regardless of the exact figure of plaintiff's income, her poverty and continued unemployment have qualified her for food stamps, Supp.App. Attach. 2, a program meant to serve the needs of "low-income households with few resources ... [R]ecipients represent a broad cross-section of the nation's poor."[5] *Characteristics of Food Stamp Households: Fiscal Year 2005—Summary*, Office of Analysis, Nutrition and Evaluation, United States Dep't of Agric. Food & Nutrition Serv. (Sept.2006), *available at* http://www.fns.usda.gov/oane/MENU/Published/FSP/FSPPartHH.htm. Even at her most efficient, plaintiff would be making over $1000 less than she needs a month. Supp.App. Attach. 8. Although it is unclear what Plaintiff's exact debt is, the different filings agree that the figure is in the tens of thousands. Pl.'s App. 2; Supp.App. Attach. 8. Plaintiff's car is, at best, worth $10,670, *see* Kelley Blue Book, http://www.kbb.com/KBB/Selection/ZipCode.aspx (last visited Apr. 24, 2007)—hardly a sum that would relieve plaintiff of her large

4. The federal poverty guidelines "are a simplified version of the poverty thresholds that the Census Bureau uses to prepare its estimates of the number of individuals and families in poverty." Annual Update of the HHS Poverty Guidelines, 72 Fed.Reg. 3147 (Jan. 24, 2007); *see also* The Access Project, http://www.atdn.org/access/poverty.html (last visited May 7, 2007) (discussing how the federal poverty guidelines, issued by the Department of Health and Human Services, are a simplification of the poverty thresholds, issued by the Census Bureau, used mainly for statistical purposes). The federal poverty guidelines are designated by the year they are issued, but they are based on information from the previous year. The Access Project, http://www.atdn.org/access/poverty.html (last visited May 1, 2007); *see* 72 Fed.Reg. 3147. The 2007 guidelines, therefore, are roughly equal to the Census

Bureau's poverty thresholds for calendar year 2006. 72 Fed.Reg. 3147. The federal poverty guidelines are used as an eligibility criterion by several Federal programs, 72 Fed.Reg. 3147, including Head Start, the Food Stamp Program, Low–Income Home Energy Assistance Program, and the Children's Health Insurance Program, The Access Project, http://www.atdn.org/access/poverty.html (last visited May 7, 2007).

5. The eligibility requirements for the Food Stamp Program are based on and largely mirror the federal poverty guidelines. *See supra* note 4; *compare Fact Sheet on Resources, Income, and Benefits*, Food Stamp Program, United States Dep't of Agric. Food & Nutrition Serv., http://www.fns.usda.gov/fsp/applicant_recipients/fs_Res_Ben_Elig.htm (last visited May 7, 2007), *with* 72 Fed.Reg. 3147.

debt or her obligations to provide for herself and her dependants. *See* Pl.'s App. 2.

The law does not require the draconian measure of selling one's home and car—both of which can qualify as necessities of life—to qualify for a fee waiver. *See Adkins,* 335 U.S. at 339, 69 S.Ct. 85. Plaintiff is hovering close to one measure of poverty, she owes a large debt despite her financial limitations, her net worth is negative, her monthly budget exceeds her monthly income, and another federal program has deemed plaintiff eligible for assistance reserved for the poor. Together, the foregoing serve to satisfy the court that payment of the fee would constitute a hardship on plaintiff. *See id.*

B. Plaintiff Meets the Procedural Requirements of Section 1915

The statute requires that the applicant submit an affidavit listing all assets possessed by the applicant, declaring "that the person is unable to pay such fees," and declaring "affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). Plaintiff has listed her assets and stated that "because of my poverty, I am unable to pay such fees ... I believe I am entitled to relief." Pl.'s App. 1.

The IFP affidavit must also state "the nature of the action, defense or appeal." 28 U.S.C. § 1915(a)(1). Plaintiff does not, however, state the nature of her action in the Application, Pl.'s App. *passim.* The court directed plaintiff to "follow the statutory requirement and state the nature of her action in her resubmitted Application." Order of Mar. 8, 2007. Plaintiff did not state the nature of her action in her Supplemental Application or her Supplemental Attachment. Supp.App. *passim;* Supp. Attach. *passim.*

As a *pro se* plaintiff, Ms. Fiebelkorn is not held to the rigid standards or formalities imposed upon parties represented by counsel. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Nevertheless, *pro se* plaintiffs must "comply with the applicable rules of procedural and substantive law." *Walsh v. United States,* 3 Cl.Ct. 539, 541 (1983) (citing *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).

■ The court believes that the statute's requirement that plaintiff "state the nature of the action" in the affidavit is a procedural one meant to avoid confusion as to which action a plaintiff is seeking a waiver of fees. In *United States v. Tapio,* 991 F.Supp. 1144, 1146–47 (D.S.D.1998), the court held that "[a]lthough the Petition/Affidavit does not state the nature of the action being brought, the Court is nonetheless satisfied that the dictates of 29 U.S.C. 1915(a)(1) have been complied with and that the requisite showing of indigency has been made." The court did not further explicate its reasoning, but the court notes that plaintiff's IFP petition was included with his "Habeas Corpus Motion," making it clear what the IFP petition was referring to. *Tapio,* 991 F.Supp. at 1146.

■ Plaintiff filed her Application on the same day that she filed her Complaint. Compl. 1. In her Complaint, plaintiff alleges that the State of South Dakota terminated her employment at the Department of Corrections, South Dakota State Penitentiary, on May 27, 2005, because of her disabilities. Compl. 2. She claims that "I truly believe I have a case of discrimination. I believe the State of South Dakota has never regarded my disabilities, therefore, not honoring State EOC [sic] and Federal ADA, Civil Rights, etc.[ ] and my Constitutional Rights were taken away." *Id.* at 1.

As in *Tapio,* there is no confusion in this case as to which action the IFP Application is attached to. Plaintiff clearly stated her claim in her Complaint, which she submitted to the court together with an Application requesting a waiver of filing fees. To bar plaintiff from waiver of the filing fees would defeat the purpose of the statute, which is "to provide access to the federal court for those persons economically unable to invoke its protection." *Carter v. Telectron, Inc.,* 452 F.Supp. 939, 943 (S.D.Tex.1976). Given the lenient standards for *pro se* plaintiffs, *Estelle,* 429 U.S. at 106, 97 S.Ct. 285, the court finds that stating the nature of plaintiff's action in a complaint, filed simultaneously with the Application, fulfills the requirements of the statute.

V. Conclusion

For the foregoing reasons, plaintiff's Application is GRANTED.

IT IS SO ORDERED.