801 F.Supp. 283 (1992)
Michael MURPHY, Plaintiff,
v.
Jim JONES, et al., Defendants.
No. N88-0029C.
United States District Court, E.D. Missouri, N.D.
September 15, 1992.
*284 Michael Murphy, pro se.
Ronald D. White, Williams and Robinson, Rolla, Mo., for plaintiff.
Bruce Farmer, Greg A. Perry, Asst. Atty. Gen., Jefferson City, Mo., for defendants.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court upon the motion of defendants Dennis Dowd, Bill Wright, Helen Scott, and James Purkett to dismiss or, in the alternative, for reconsideration of plaintiff's in forma pauperis status. This motion was referred to the Honorable Carol E. Jackson, United States Magistrate Judge,[1] pursuant to 28 U.S.C. § 636(b).
On May 12, 1992, Magistrate Judge Jackson filed a report recommending that the defendants' motion to dismiss be granted because plaintiff had failed to comply with Local Rule 37(A)(1) which requires that plaintiff notify the Court of any change in his financial status. Magistrate Judge Jackson also recommended that the defendants' motion for reconsideration of plaintiff's in forma pauperis status be denied as moot. The parties were given eleven days to file written objections to Magistrate Judge Jackson's report.
On May 14, 1992, plaintiff filed a new financial affidavit (CJA Form 23). In this financial affidavit plaintiff states that he is currently employed and earns $720 per month (gross), that he has $405 in cash or *285 on deposit, and that he has monthly expenses of $275.
For the reasons stated herein, defendants' motion to dismiss is denied. Defendants' motion for reconsideration of plaintiff's in forma pauperis status, however, is hereby referred to the Honorable Frederick R. Buckles, United States Magistrate Judge, for further proceedings consistent with this Order.

I. Background
On February 14, 1988, plaintiff, a state prisoner, submitted to the Clerk of the Court a complaint under 42 U.S.C. § 1983 and an application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. The gravamen of the complaint is that the defendants deprived plaintiff of his right to practice his religious beliefs and that the defendants refused to recognize plaintiff's church, the Church of Jesus Christ Christian/Aryan Nations,[2] as a valid religious organization. The financial affidavit accompanying the application indicated that plaintiff received $30 per month in wages from the Missouri State Penitentiary; that plaintiff had received a small gift of cash and had received $20 from the sale of some dictionaries within the year preceding the date of the affidavit; and that plaintiff had $53 on deposit in his inmate account.
On February 17, 1988, the Honorable Robert D. Kingsland, United States Magistrate Judge, ordered the Clerk of the Court to "provisionally" file the complaint subject to the condition that plaintiff pay $13 as a partial filing fee.[3] The complaint was provisionally filed on February 18, 1988, and plaintiff paid the partial filing fee on March 2, 1988.
On July 6, 1988, plaintiff requested leave to file a supplemental complaint. The Honorable George F. Gunn, Jr., United States District Judge, granted plaintiff's request on November 15, 1988 and plaintiff's first supplemental complaint was filed on that same date.
No answer or other responsive pleading was filed by or on behalf of the defendants until March 14, 1990, when the defendants were faced with the prospect of a default judgment being entered against them by Judge Gunn. Plaintiff was appointed counsel on August 27, 1990, and, for a short period of time, this case appeared to be proceeding in due course.
On August 28, 1991, plaintiff filed a document indicating that he had been transferred to the Kansas City Honor Center ("KCHC"), a halfway house.
This case was subsequently reassigned to the undersigned. On February 14, 1992, and on March 3, 1992, orders were entered directing the parties to file status reports concerning this case. In response to these orders, the Missouri Attorney General's Office filed status reports on behalf of defendants Dowd, Wright, Scott, and Purkett. These reports state that the Attorney General's Office had closed its file concerning this case because plaintiff's appointed counsel had indicated that the plaintiff would be filing a motion to dismiss the complaint.[4] The Court has received no response from plaintiff's appointed counsel, but plaintiff has filed a status report indicating that his appointed counsel "has the case file and exhibits" and that "there are several plaintiffs wishing to join the action." Defendants then filed the instant motion to dismiss or, in the alternative, to revoke plaintiff's in forma pauperis status.

*286 II. DISCUSSION

A. Local Rule 37(A)(1)
Local Rule 37(A)(1) provides that a person seeking to commence an action pursuant to 28 U.S.C. § 1915 shall submit financial information to the Court on CJA Form 23 (Financial Affidavit). Local Rule 37 further states that "[i]f at any time there is a change in the applicant's financial status, the applicant shall promptly notify the Clerk in writing of such change. Failure to so notify may result in dismissal of the case or other sanctions." Local Rule 37(A)(1) (emphasis in original).[5]
Clearly, Local Rule 37(A)(1) requires a person who has applied for leave to proceed in forma pauperis to notify the Court of any changes in his or her financial condition prior to the Court granting or denying such application. Less clear, however, is whether a person who has been granted leave to proceed in forma pauperis has a continuing obligation to notify the Court of changes in his or her financial condition. On this issue Local Rule 37(A)(1) is ambiguous.
The ambiguity is caused by the linking of the phrase "[i]f at any time" with the concept of applicant. Applicant is usually a temporary status. For example, a person who applies for a job is not usually considered to be an applicant after being offered the job. Similarly, a person who has been granted or denied leave to proceed in forma pauperis is not usually considered an "applicant" for such status.
The federal district courts, however, have broad authority to enact rules concerning local practice so long as such rules are not inconsistent with the federal rules of procedure or Acts of Congress. Fed. R.Civ.P. 83; 28 U.S.C. § 2071 (1988). A local rule that requires a person who has been granted leave to proceed in forma pauperis to notify the Court whenever there is a change in that person's financial status is not inconsistent with 28 U.S.C. § 1915. Despite the ambiguity in Local Rule 37, it appears that the Court intended to impose such a requirement on persons granted leave to proceed in forma pauperis. Therefore, the undersigned finds that plaintiff has an obligation to notify the Court whenever there is a material change[6] in his financial condition.
A failure to comply with Local Rule 37(A)(1), however, does not automatically result in the dismissal of an action. Dismissal is only one of several sanctions which the Court may, in its discretion, impose. Given the ambiguous language used in Local Rule 37 and given plaintiff's eventual compliance with the rule, dismissal would be too harsh a penalty. Therefore, defendants' motion to dismiss is hereby denied.

B. Reconsideration of in forma pauperis status under 28 U.S.C. § 1915
As an alternative to dismissal, defendants request that the Court (i) reconsider plaintiff's in forma pauperis status; (ii) require plaintiff to pay the full filing fee; and (iii) discharge plaintiff's appointed attorney. In support of their motion, defendants submitted an affidavit from Jerome Weiler, Inmate Finance Officer, which indicates that as of January 28, 1992, plaintiff had $62.09 in his "personal" inmate account and $1,224.75 in his "work release savings" account. Based upon this affidavit, defendants believe that "plaintiff has sufficient funds ... to pay the filing fee and to proceed without taxpayer support."
Defendants' motion raises several issues that appear to be matters of first impression in this circuit. First, may the Court reconsider plaintiff's in forma pauperis status under 28 U.S.C. § 1915? Second, assuming that the Court may reconsider plaintiff's in forma pauperis status, may the Court retroactively revoke that status *287 and require the plaintiff to pay the $120 filing fee? Third, if plaintiff's in forma pauperis status is revoked, must plaintiff's appointed counsel be discharged?

1. Revocation of in forma pauperis status
The proper starting place for answering these questions is 28 U.S.C. § 1915. Section 1915 provides:
(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs and security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress. An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.
(b) Upon the filing of an affidavit in accordance with subsection (a) of this section, the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate [judge] in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title or under section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.
(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.
(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
(e) Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.
28 U.S.C. § 1915 (1988).
Section 1915(a) guarantees that no citizen shall be denied access to the federal courts "solely because ... poverty makes it impossible ... to pay or secure the costs" of litigation. Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342, 69 S.Ct. 85, 90, 93 L.Ed. 43 (1948). While § 1915(a) seeks to lower the economic barriers that impede access to the federal courts, § 1915(d) grants federal courts additional power to dismiss a complaint filed under § 1915(a).
Unlike a paying litigant, an indigent litigant's complaint may be dismissed if the Court believes that "the allegation of poverty [in the affidavit] is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1988). Congress justified giving federal courts broader power to dismiss an indigent litigant's complaint because "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Dismissals under § 1915(d) are usually made sua sponte prior to the issuance of process.[7]Id. This spares prospective defendants *288 the inconvenience or expense of answering frivolous or malicious complaints. Id.
The benefits of § 1915(a), however, extend beyond the removal of economic barriers limiting access to the federal courts. Indigent litigants may also obtain assistance in the prosecution of their complaints. For example, a person proceeding under § 1915(a) may have the summons and complaint served by the United States Marshal. In addition, an indigent litigant is not required to pay a variety of fees charged by the Clerk's Office for items such as photocopies ($.50 per page), retrieving records from a federal records center ($25), and reproduction of magnetic tape recordings ($15).
Furthermore, a person proceeding under § 1915(a) can be relieved of the burden of depositing or posting security for "costs." "Costs" are litigation expenses which can be taxed against a party. Expenses that can be taxed as "costs" include, but are not limited to, the following: clerk fees, marshal fees, court reporter fees for preparing a stenographic transcript, docket fees and compensation of court appointed experts. 28 U.S.C. § 1920 (1988). To ensure that such expenses can be recovered, "[t]he Court may, upon proper showing, require any party to deposit or otherwise provide adequate security for costs in an amount and within a time to be designated by the Court." Local Rule 24. In general, indigent litigants are not required to deposit or provide security for "costs."[8]
Unfortunately, § 1915 does not state what actions a federal court may, or may not, take if the financial condition of a party proceeding in forma pauperis improves during the course of the litigation. Like other matters concerning § 1915, the federal courts are left with the task of fashioning procedures by which the statute operates. Neitzke, 490 U.S. at 325, 109 S.Ct. at 1831.
In forma pauperis status is a privilege, not a right, granted by the federal courts. Camp v. Oliver, 798 F.2d 434 (11th Cir.1986). Because in forma pauperis status is a privilege, it follows that the privilege may be revoked when the goals of § 1915 are not being furthered. If an indigent litigant's financial condition improves to the point that his economic situation does not prohibit him from maintaining *289 his action, then assistance under § 1915 is no longer justified.
Therefore, the undersigned finds that the Court may revoke plaintiff's in forma pauperis status if there is sufficient evidence that plaintiff's financial condition has improved to the point that plaintiff's economic situation is no longer a significant barrier to maintaining the action.
In the present case, however, the Court is unable to determine whether plaintiff's financial condition has materially improved since the filing of his complaint. On one hand, plaintiff has filed a financial affidavit indicating that his financial situation, while improved, is not outside the range for continuing in forma pauperis status. On the other hand, the defendants have filed affidavits indicating that plaintiff has substantial amounts in savings accounts. Therefore, the undersigned refers this matter to Magistrate Judge Buckles for a report concerning plaintiff's current financial status and a recommendation concerning plaintiff's eligibility for in forma pauperis status.

2. Retroactive effect of revocation
Assuming that plaintiff's financial condition has improved to the point that in forma pauperis status should be revoked, it is not clear whether such revocation is prospective only or whether revocation is retroactive to the date of filing.
The few district courts which have addressed the issue have found that revocation of in forma pauperis status is retroactive to the date of filing. Specifically, these courts hold that the federal courts have the authority to dismiss a case or, in lieu of dismissal, to require an indigent litigant to pay the full filing fee plus all costs of litigation incurred from the date of filing. See Wiideman v. Harper, 754 F.Supp. 808, 809 (D.Nev.1990); Holsey v. Bass, 519 F.Supp. 395, 405 n. 24 (D.Md. 1981); Carter v. Telectron, Inc., 452 F.Supp. 939, 942 (S.D.Tex.1976). This "pay or dismiss" approach has some appeal. There are several reasons, however, to question the persuasive authority of these district court decisions and the "pay or dismiss" approach.
To dismiss a case under § 1915(d) the Court must find that the allegation of poverty set forth in the affidavit is "untrue" or that the action is frivolous or malicious. The district courts above have held that a post-filing change in an indigent litigant's financial condition makes the litigant's prefiling allegation of poverty "untrue" for purposes of § 1915(d). As stated in Carter, supra, a "Court is not bound by plaintiff's economic status on the date of filing ... [and the] Court should, if necessary, take into account all relevant changes in plaintiff's financial condition, both prior to and subsequent to the filing of the suit" for purposes of determining whether plaintiff's allegation of poverty under § 1915(a) is untrue. Carter v. Telectron, Inc., 452 F.Supp. at 942.
Prior to Carter, several courts held that a plaintiff's financial dealings during the time period immediately preceding the filing of the suit could be examined to determine whether plaintiff had intentionally shifted or wasted assets that otherwise could have been used to finance the suit. In re Stump, 449 F.2d 1297, 1298 (1st Cir.1971); Dreyer v. Jalet, 349 F.Supp. 452, 460 (S.D.Tex.1972). This approach is consistent with Congress' intent to remove economic barriers which might deny access to the federal courts. A prosperous person does not face the same economic barriers to initiating a lawsuit as an indigent person. Congress' intent is not furthered when a person intentionally disables his finances solely to take advantage of § 1915(a). Such a person commits a fraud on the Court as surely as the person who flagrantly understates his financial holdings.
But a person, like the plaintiff, whose financial condition has gradually improved after being granted leave to file his complaint under § 1915(a) has not committed a fraud upon the Court. Consequently, there is no basis for finding that plaintiff's financial affidavit is "untrue" pursuant to § 1915(d).
*290 The district court in Carter also relied on a portion of the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, to force the indigent plaintiff to reimburse the United States for filing and service of process fees. The CJA sets forth a comprehensive scheme for the compensation of attorneys, experts, investigators and others who provide services to indigent persons in certain criminal and quasi-criminal proceedings. The CJA provides that if "the court finds that funds are available for payment on or on behalf of the person furnished representation," then the court may (i) terminate the appointment of counsel and (ii) recoup the money expended for the representation. 18 U.S.C. § 3006A(c) and (f) (1988).
Unlike the district court in Carter, the undersigned finds the analogy to § 3006A neither clear nor convincing. There are two separate and distinct mechanisms for dealing with indigent parties in our federal system. The first mechanism, represented by the CJA, is highly structured and primarily addresses an accused's constitutional right to representation. The second mechanism, represented by § 1915, is loosely structured and addresses the access of poor persons to the federal courts.
The representation of indigent parties under the CJA results in direct and identifiable expenditures from the federal judiciary's budget. These expenditures are substantial. For example, CJA panel attorneys have been paid more than $88.6 million in fiscal year 1992. Funding for Criminal Justice Act Attorneys Runs Short, The Third Branch (Administrative Office of the United States Courts) July, 1992 at 1. These expenditures of taxpayer funds can be traced and, where appropriate, recouped.
The grant of in forma pauperis status in a civil case, however, does not result in a direct or identifiable expenditure of taxpayer funds. The $120 filing fee and the fee for serving process are not paid by any branch of the federal government; they are waived and uncollected. Furthermore, because there is no provision for compensating appointed counsel, the costs connected with representing an indigent litigant under § 1915 are absorbed by the members of the bar.
Because the CJA and § 1915 represent two different systems and because they involve different types of costs, it would be inappropriate to graft portions of the CJA onto § 1915. Any amendment of § 1915 must await congressional action.
Finally, there is nothing to be gained by forcing plaintiff to pay the full $120 filing fee at this stage of the proceedings. The $13 partial filing fee plaintiff paid in 1988, when he had only $53, provided some economic incentive not to file a frivolous or malicious complaint. The complaint was reviewed by Magistrate Judge Kingsland before filing and, by implication, found to be non-frivolous. Therefore, the undersigned finds that the revocation of in forma pauperis status has a prospective effect only and is not retroactive to the date of filing.

3. Discharge of plaintiff's appointed counsel
If plaintiff's in forma pauperis status is revoked, the defendants urge the Court to discharge plaintiff's appointed counsel. Under § 1915(d), however, a federal court may only request, not compel, an attorney to represent an indigent litigant. Mallard v. United States Dist. Court, 490 U.S. 296, 308, 109 S.Ct. 1814, 1821-22, 104 L.Ed.2d 318 (1989). Consequently, plaintiff's appointed counsel may continue to represent plaintiff even if plaintiff's in forma pauperis status is revoked. Because plaintiff's appointed counsel has not indicated any desire to be discharged, the undersigned reserves ruling on whether the Court may utilize its inherent authority to compel him to continue with the representation. Id. at 310, 109 S.Ct. at 1822-23.
NOTES
[1] On August 12, 1992, Magistrate Judge Jackson was confirmed as a United States District Judge for the Eastern District of Missouri.
[2] In his second supplemental complaint, plaintiff states that he and others incorporated the Israel Identification Church, a Missouri nonprofit corporation, which espouses the same religious philosophy as the Church of Jesus Christ Christian/Aryan Nations.
[3] Magistrate Judge Kingsland calculated the partial filing fee by taking 30% of plaintiff's average monthly income for the preceding six months, excluding all amounts of $5.00 or less.
[4] The Court's records indicate that plaintiff's appointed counsel and an attorney for the defendants appeared before Judge Gunn on May 15, 1991. The Court's records also indicate that plaintiff's appointed counsel informed Judge Gunn that plaintiff would file a motion to dismiss.
[5] This requirement was added to Local Rule 37 on September 13, 1989.
[6] This Court does not intend to become embroiled in a dispute every time plaintiff's financial condition fluctuates. Plaintiff must report, and defendants should bring to the Court's attention, only those changes which substantially improve plaintiff's ability to commence or maintain an action without assistance under § 1915.
[7] While the Eighth Circuit Court of Appeals has not held that a dismissal under § 1915(d) is improper after service of process, the Court of Appeals has emphasized that "[d]ismissals under section 1915 are to be made early in the proceedings, before service of process on the defendant and before burdening a defendant with the necessity of making a responsive answer." Williams v. White, 897 F.2d 942, 943-44 (8th Cir.1990); cf. Smith v. Boyd, 945 F.2d 1041, 1042 (8th Cir.1991) (sua sponte dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper so long as dismissal does not precede service of process).
[8] Several courts, however, have held that an indigent litigant may have "costs" taxed against him at the conclusion of the case if he is unsuccessful on the merits of his action. Sales v. Marshall, 873 F.2d 115 (6th Cir.1989); Lay v. Anderson, 837 F.2d 231 (5th Cir.1988) (per curiam); Flint v. Haynes, 651 F.2d 970 (4th Cir. 1981); Harris v. Forsyth, 742 F.2d 1277 (11th Cir.1984); accord Duhart v. Carlson, 469 F.2d 471 (10th Cir.1972) (court may tax costs against indigent plaintiff if complaint is frivolous). In general, these courts note that the use of the word "prepayment" indicates that Congress did not intend to waive forever the payment of costs. Pursuant to § 1915(e) "costs" suspended under § 1915(a) may be taxed "as in other cases." 28 U.S.C. § 1915(e).

In other civil cases, Federal Rule of Civil Procedure 54(d) provides that "costs shall be allowed as [a matter] of course to the prevailing party." Fed.R.Civ.P. 54(d). Thus, these courts hold that the actual expenses incurred by a defendant and allowable as costs under 28 U.S.C. § 1920 may be taxed against an inmate to whom the court has granted in forma pauperis status. Because filing fees and fees for service of process are not paid by the defendant, however, they are not taxable in the defendant's favor as a cost under Rule 54(d).
Although a court may tax the costs of preparing a stenographic transcript and of printing a record in favor of the United States under § 1915(e) if the Administrative Office of the United States Courts has paid such expenses under § 1915(b), there is no statutory authority for taxing items such as filing fees and fees for service of process in favor of the Court, the United States Marshal, or the United States. Evans v. Tennessee Dep't of Corrections, 514 F.2d 283 (6th Cir.1975). But cf. Lay v. Anderson, 837 F.2d at 232 ($105 court of appeals fees taxed against indigent plaintiff); Flint v. Haynes, 651 F.2d at 972 n. 3-4 (costs for filing the complaint and marshal's service of process taxed against indigent plaintiff). The power to tax certain costs in favor of the United States was expressly provided for by Congress and does not appear to be an inherent power of the court. 28 U.S.C. § 1915(e) revision note (1949 Act).