**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 7, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

THERON T. MATTHEWS,

      Plaintiff-Appellant,

v.

LABARGE, INC.,

      Defendant-Appellee.

No. 09-5171
(D.C. No. 4:09-CV-00177-GKF-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

Theron T. Matthews claims that he was falsely induced to work for LaBarge, Inc. and then wrongfully terminated. The district court dismissed his complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mr. Matthews appeals that decision; and exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

The "second amended complaint"[1] alleged the following: Mr. Matthews moved to Oklahoma after he was offered the position of Director of Operations at LaBarge. The offer included the promise of a promotion to vice president of operations when the current vice president retired. Mr. Matthews started his job on January 3, 2006. Within a year he began discovering a series of statutory and regulatory violations. He attempted to correct these perceived violations and reported them to his superiors, but his complaints were ignored. On March 2, 2007, he was fired, although he had always performed his job competently and diligently. Even after his termination, LaBarge continued to make derogatory comments about him, harming his employment prospects. At some point, he filed an unsuccessful grievance with the Department of Labor.

Mr. Matthews originally filed suit in state court, generally alleging fraud, deceit, defamation, and wrongful discharge. LaBarge removed the case to federal court, and sought dismissal under Federal Rule of Civil Procedure 12(b)(6). Mr. Matthews filed both a response to the motion and his second amended complaint. LaBarge then moved to dismiss that complaint. Mr. Matthews responded in the same fashion as before. He filed a response to the new motion

---

[1] Mr. Matthews captioned his first amended complaint as his "second amended complaint" and his second amended complaint as his "third amended complaint." For simplicity, we reference these pleadings by Mr. Matthews's titles.

to dismiss and his third amended complaint.  LaBarge moved the district court to strike the third amended complaint under Federal Rule of Civil Procedure 15(a)(2) because Mr. Matthews had obtained neither LaBarge's consent nor leave of court before filing the pleading.  On November 2, 2009, the district court granted the motion to strike and the motion to dismiss under Rule 12(b)(6).  On December 4, 2009, Mr. Matthews filed his notice of appeal.

## II

### A.    Jurisdiction

We first consider our jurisdiction.  Under Federal Rule of Appellate Procedure 4(a)(1)(A), an appellant must file a notice of appeal within 30 days from the date of entry of the district court's judgment or order being appealed. *See Medical Supply Chain, Inc. v. Neoforma, Inc.*, 508 F.3d 572, 573 (10th Cir. 2007).  Failure to file a timely notice of appeal precludes this court from considering the merits of the appeal.  *See Vanderwerf v. SmithKline Beecham Corp.*, 603 F.3d 842, 845 (10th Cir. 2010).  Mr. Matthews's notice of appeal was filed 32 days after the district court dismissed his complaint.  But Federal Rule of Civil Procedure 58(a) requires that the district court's judgment be entered on a separate document; and if judgment is not set forth on a separate document, judgment is not deemed entered until "150 days have run from the entry in the civil docket," Fed. R. Civ. P. 58(c)(2)(B).  As happens far too frequently in this

circuit, no separate document was ever filed. Accordingly, the notice of appeal was timely.

### B. Standard of Review

"We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). We accept all well-pleaded allegations as true, asking whether the complaint contains enough factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (internal quotation marks omitted). We construe pro se pleadings liberally. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

### C. Merits

#### 1. Order Striking Third Amended Complaint

Initially, we reject Mr. Matthews's contention that the district court abused its discretion by striking his third amended complaint. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009) (reviewing denial of leave to amend

complaint for abuse of discretion). He had been permitted to file his second amended complaint as a matter of course because he filed it within 21 days of LaBarge's first motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1). But his third amended complaint could be filed "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although leave should be freely given when justice so requires, Mr. Matthews made no attempt to procure either LaBarge's consent or the court's permission before filing it. Mr. Matthews argues that he was unaware of these conditions and must be allowed to respond to LaBarge's objection; but LaBarge highlighted the requirements of Rule 15(a)(2) in its motion to strike the third amended complaint, and Mr. Matthews's response did not explain his failure to satisfy those requirements. He merely stated that he had submitted the third amended complaint to add "names, dates and events" because LaBarge's motion to dismiss the second amended complaint had objected to the lack of supporting facts. R., Vol. 1 at 98. He said that the new complaint "did not modify the Claims nor did it revise the existing facts." *Id.* Moreover, a comparison of the second and third amended complaints indicates that the additions in the third amended complaint are almost all irrelevant to the grounds on which the district court dismissed the second amended complaint. Under these

circumstances, we cannot say that the court abused its discretion in striking the unauthorized pleading.[2]

## 2.    Forfeiture of Claims Three and Four

Turning to the second amended complaint, we first address claims three and four. An appellant who fails to raise arguments or present them adequately in the opening brief on appeal forfeits appellate review. *See, e.g., Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). We recognize, again, that Mr. Matthews is proceeding pro se, but "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets and internal quotation marks omitted). "Under [Federal Rule of Appellate Procedure] 28, which applies equally to pro se litigants, a brief must contain more than a generalized assertion of error, with citations to supporting authority. When a pro se litigant fails to comply with that rule, we cannot fill the void by crafting arguments and performing the necessary legal research." *Id.* at 841 (ellipsis, citation, brackets and internal quotation marks omitted). Mr. Matthews's opening brief contains no assertion of error and presents neither argument nor authority relating to claims three and four; in fact, aside from reiterating the allegations

[2]    Mr. Matthews also asks us to allow him to add a new claim under 18 U.S.C. § 1514A. We deny the request, which was not made below. *See Tele-Commc'ns, Inc. v. Comm'r.*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("[A]n issue must be presented to, considered and decided by the trial court before it can be raised on appeal." (brackets and internal quotation marks omitted)).

from the second amended complaint, Mr. Matthews completely neglects to mention these claims at all. He has thus forfeited appellate review on these claims.

### 3. Claim One - Fraudulent Hiring

Claim one of the complaint alleges a violation of Okla. Stat. tit. 40, § 167, which states:

> It shall be unlawful for any employer of labor doing business in the state, to induce, influence, persuade or engage workmen to change from one place to another in the state, or to bring workmen of any class or calling into this state to work in any of the departments of labor, through or by means of false or deceptive representations, false advertising or false pretenses concerning the kind and character of the work to be done, or amount and character of the compensation to be paid for such work or the sanitary or other conditions of employment or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to such engagement. Failure to state in an advertisement, proposal or contract for the employment of workmen that there is a strike, lockout or other labor trouble at the place of the proposed employment, when in fact such strike, lockout or other labor troubles then actually exist at such place, shall be deemed a false advertisement and misrepresentation for the purposes of this section.

Mr. Matthews alleged that LaBarge violated the statute when it induced him to relocate to Oklahoma with the false promise of being promoted to vice president of operations.

The district court ruled the statute inapplicable because it protects only "workmen" and Mr. Matthews was not a "workman." On appeal Mr. Matthews contends that the court erred because the statutory term *workman* refers to "all

people (hourly, supervisors, managers and executives, etc.)."  Aplt. Br. at 13–14.
We need not decide, however, whether Mr. Matthews falls within the statutory
meaning of *workman* because there is an alternative ground upon which to affirm
dismissal of this claim.  *See Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir.
2003) (court may affirm on alternative grounds if "there is a record sufficient to
permit conclusions of law" (internal quotation marks omitted)).

     Mr. Matthews's fraudulent-hiring claim does not come within the purview
of § 167 because LaBarge's alleged representation concerning promotion is not
the type of employer conduct governed by the statute.  The statute on its face
focuses on the practice of recruiting strike breakers through false inducements.  In
an early case, the one purpose of the statute identified by the Oklahoma Supreme
Court (although it did not rule out other purposes) was "protection . . . from the
turmoil and strife that would probably result upon the importation of laborers, at a
place and business where a strike is on."  *Riter-Conley Mfg. Co. v. Wryn*,
174 P. 280, 284 (Okla. 1918).  Thus, the misrepresentations prohibited by the
statute are limited to those regarding employment conditions typically associated
with labor disputes:  the character of work to be done, pay, sanitary conditions,
and the existence of labor disputes.  Mr. Matthews, however, was given the job
for which he was hired, does not allege that he was misled with regard to his
salary or the sanitary conditions at LaBarge, and alleges nothing akin to false

statements of a labor dispute. He thus fails to state a claim under Okla. Stat. tit. 40, § 167.

### 4. Claim Two - Deceit

Mr. Matthews also claimed that he was willfully deceived by LaBarge's alleged promise of promotion to vice president of operations. He contends that this deceit violated Okla. Stat. tit. 76, § 2, which provides, "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Because the claim was based on alleged fraudulent or deceptive statements, the district court applied the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and dismissed the claim on the ground that Mr. Matthews did not specify who made the alleged promise, where it was made, or how it was made.

On appeal Mr. Matthews does not argue that his second amended complaint sets forth with particularity the circumstances of the alleged deception. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (Rule 9(b) requires that a plaintiff "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." (internal quotation marks omitted)). Instead, Mr. Matthews refers us to his third amended complaint and

asserts that it meets the elevated pleading standard. We have already determined, however, that the district court properly struck the third amended complaint. Moreover, even if we were to consider the new allegations, they fail to satisfy Rule 9(b). Although the third amended complaint, unlike its predecessor, identifies the individual who allegedly promised Mr. Matthews the promotion during an interview, there remains no indication of where this promise was made, the means of communication, or what words conveyed the promise. The allegations regarding the promise might support a contract claim, but they are inadequate for a claim of fraud.

### 5. Claim Five - Wrongful Termination

In *Burk v. K-Mart Corp.*, 770 P.2d 24, 28–29 (Okla. 1989), the Oklahoma Supreme Court recognized an exception to the common-law employment-at-will doctrine for terminations in violation of public policy. The exception is "tightly circumscribed" and limited to cases "where an employee is discharged for (1) refusing to violate an established and well-defined public policy or (2) performing some act consistent with a clear and compelling public policy." *Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1210 (Okla. 2008). Further, Oklahoma public policy must be articulated in "a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state." *Id.* at 1212 (emphasis omitted).

-10-

Mr. Matthews alleged that he had been fired for reporting federal statutory and regulatory violations. He also cited violations of Okla. Stat. tit. 71, § 1-501, which criminalizes fraudulent transfers of securities, and Okla. Stat. tit. 40, § 403, which addresses retaliatory conduct for safety complaints. The district court determined that the federal statutes and regulations could not provide a proper statement of Oklahoma public policy, and that the two Oklahoma statutes were inapplicable. In particular, the court ruled (1) that § 1-501 was inapplicable because there were no allegations connecting the alleged misconduct to an offer, sale or purchase of a security as required by the statute, and (2) that § 403 was inapplicable because it provided no basis to assert a *Burk* claim against a private employer like LaBarge.[3]

We agree with the district court. To begin with, federal statutes and regulations cannot support Mr. Matthews's public-policy claim. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003) (Under Oklahoma law, "[t]he clear and compelling public policy . . . must be articulated by state constitutional, statutory, regulatory or decisional law.").

Also, the cited state statutes do not help Mr. Matthews. He cannot rely on a violation of § 1-501 because he failed to allege any fraudulent activity "in

---

[3]    Mr. Matthews also cited Oklahoma Jury Instruction § 21.2 in the title of this claim. But he has not articulated any argument under this provision. His failure to develop the issue constitutes forfeiture. *See Bronson*, 500 F.3d at 1104.

connection with the offer, sale, or purchase of a security," as required by that section. The second amended complaint alleges that LaBarge was overstating revenue, profits, and inventory; but there are no allegations pertaining to security transfers. *See Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Although Mr. Matthews elaborates on the factual basis of this claim in his appellate brief, he was obliged to include those facts in his second amended complaint. *See Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 840 (10th Cir. 2003) ("[T]he 'facts' in the case are limited to the well-pleaded allegations in the complaint."). And even the allegations in his brief and in the third amended complaint do not mention any transfers of securities.

Likewise, § 403 does not apply because LaBarge is not a public employer. Section 403 is a provision of Oklahoma's Occupational Health & Safety Standards Act, Okla. Stat. tit. 40, §§ 401 -435, which defines *employer* as "the state and all its political subdivisions which has in its employ one or more individuals performing services for it in employment," *id.* § 402. Contrary to Mr. Matthews's assertion, LaBarge's status as a publicly traded company does not make it an employer under the Act. *See Griffin v. Mullinix*, 947 P.2d 177, 180 (Okla. 1997) ("[N]o Oklahoma articulation of public policy exists with regard to

-12-

the private employer under the Oklahoma Occupational Safety & Health Standards Act.").

### 6.    Claim Six - Okla. Stat. tit. 76, § 1

Finally, Mr. Matthews raised a claim under Okla. Stat. tit. 76, § 1, which provides, "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights."  But, as recognized by the district court, this statute does not establish a standard of care and does not create a separate cause of action.  *See Gilmore v. Enogex, Inc.*, 878 P.2d 360, 365 (Okla. 1994) (statute does not create a separate tort claim apart from alternative breach-of-contract and wrongful-discharge claims).

### III

The judgment of the district court is AFFIRMED.  Mr. Matthews's requests to file a third amended complaint and add a new claim on appeal are DENIED.  Mr. Matthews's motion to proceed on appeal *in forma pauperis* is DENIED, and he is instructed to pay the filing fee within 30 days from the date of this Order and Judgment.

Entered for the Court


Harris L Hartz
Circuit Judge

09-5171 *Matthews v. LaBarge, Inc.*
O'Brien, J., dissenting.

I have no quarrel with majority's resolution of the merits. I object to reaching the merits before Matthews paid the necessary filing and docketing fees. Such an approach is not in keeping with the language or spirit of 28 U.S.C. § 1915. "The statute [allowing a litigant to proceed *in forma pauperis*] was intended for the benefit of those too poor to pay or give security for costs. . . ." *Adkins v. E.I. Dupont de Nemours & Co.*, 335 U.S. 331, 344 (1948). While a litigant need not be "absolutely destitute," "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Id.* at 339 (quotations omitted).[1]

Nevertheless, a court "*shall dismiss*" a case "*at any time*" if: "the allegation of poverty is untrue; the case is frivolous or malicious; the case fails to state a claim on which relief may be granted; or a party seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (emphasis

---

[1]Section 1915(a)(1) provides in relevant part:

> [A]ny court of the United States may authorize the *commencement*, prosecution or defense *of any . . . appeal . . .* without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(Emphasis added).

added).  Thus, we are directed to review the litigant's request to proceed *in forma pauperis* (*ifp*) at the *commencement* of the action or appeal to determine whether the litigant is entitled to the benefits of the statute.[2]

The statute requires dismissal of a case or appeal if the court finds the litigant is not sufficiently poor to qualify.  *See Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000); 28 U.S.C. § 1915(e)(2).  The court need not address the substantive claims to determine an ability to pay.[3]  A review of the required affidavit often can reveal the litigant's financial eligibility, thereby protecting the public against misuse of public funds by a non-eligible litigant.[4]

---

[2] Matthews filed a request to proceed *ifp* on appeal with the district court.  The district court conditionally denied the motion because Matthews failed to attach a financial affidavit.  The district court gave him time to correct the deficiencies, but he failed to do so.  Instead, he filed with this Court a new request to proceed *ifp* on appeal.  He included the proper forms.  *See* Rule 24(a)(4) and (5) of the Federal Rules of Appellate Procedure.

[3] But once the indigent status of the litigant is determined, the remaining requirements (frivolous, malicious, failure to state a claim, etc.) assure that proceeding *ifp* will not fund the filing of inappropriate lawsuits from the public purse.  28 U.S.C. § 1915(e)(2).

[4] However, there is no statutory language preventing a court from allowing the litigant a certain time in which to pay the filing fees in order to avoid dismissal.  It appears this is the procedure used by the Supreme Court.  In *Brown v. Herald Co., Inc.*, 464 U.S. 928 (1983), the Court issued an order in six separate cases denying *ifp* status and allowing the litigants twenty days in which to pay the filing fees.  In dissent Justice Brennan, joined by Justices Blackmun and Marshall, wrote: "In each of these cases, the Court has denied petitioner's or appellant's motion to proceed *in forma pauperis* without initially addressing the issue whether the questions presented in the petition for certiorari or jurisdictional statement merit our plenary review -- and the Court is apparently announcing today that this will be our practice in the future."  *Id.* at 928-29.  *Brown* has been cited in dissent in no less than 220 Supreme Court denials of *ifp* through 1989.  Justice Stevens

2

Even a cursory review of Matthews' affidavit reveals his "allegation of poverty is untrue" -- he is not indigent and should not be permitted to proceed *ifp*. Matthews' affidavit says he is "self-employed,"[5] averaging $10,000 per month in income. His wife has a $70,000 per year job. They own a $460,000 home (on which $460,000 is owed), a 1996 Jeep Cherokee valued at $3,000 ($2,700 owed), a 2004 van valued at $4,200 ($3,000 owed) and a $10,000 "Harley" ($9,000 owed). He states his monthly expenses (including his house and car payments) are $6,440.00.[6] Matthews claims he can pay no monthly amounts toward the fees for his appeal. But, according to his own financial statements, after his expenditures he nets approximately $3,000 a month. Surely, he could pay his filing fee "and still be able to provide himself and [his] dependents with the necessities of life." *Adkins*, 335 U.S. at 339 (quotations omitted).

The majority's after-the-fact-requirement for payment of statutory filing and docketing fees is a sly wink and a nod at the relevant statutes. Having received a merits decision, Matthews has no incentive to pay the fees and likely

joined the dissenters in 1987. *See Gelb v. Royal Globe Ins. Co.*, 479 U.S. 1081 (1987).

[5] Elsewhere on his affidavit he states he is "unemployed." (Aff. at 3.)

[6] Conveniently, the affidavit divides his and his wife's respective contributions to the family obligations as follows: he pays $3,200 of the mortgage while his wife pays $200; he pays $500 per month in utilities while his wife pays $200; he pays $50 per month for home maintenance, his wife pays nothing; he pays $700 per month in transportation, his wife pays $200; he pays $40 per month for recreation, his wife pays nothing; they share equally the cost of food at $300 each per month; he pays the homeowners insurance ($200 per month) and the real estate taxes ($650 per month), she pays $700 per month for auto insurance. In sum, he pays $6,440 and she pays $2,725 in monthly necessities. (Aff. at 7.)

will not.  Following the Supreme Court's lead, we should have denied the request to proceed *ifp* on appeal and allowed Matthews twenty days to pay the necessary fees as a precondition to consideration of his appeal.  Accordingly, I dissent.